**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 00-10197**

_____

**AVIALL SERVICES, INC.,**

**Plaintiff-Counterdefendant-Appellant,**

**versus**

**COOPER INDUSTRIES, INC.,**

**Defendant-Counterclaimant-Appellee.**

_____

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

November 14, 2002

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, and DENNIS, Circuit Judges.[1]

EDITH H. JONES, Circuit Judge:

The question presented in this case is whether § 113(f)(1) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") allows a "potentially responsible party" (PRP) to seek contribution from other PRPs for environmental cleanup costs when no civil action has been brought under CERCLA §§ 106 or 107(a). See 42 U.S.C. §§ 9606, 9607(a), 9613(f)(1) (2000) (hereinafter, citations are to sections of

_____

[1]Judge Clement is recused and did not participate in the decision. Judge Parker retired before the case was decided.

CERCLA). We hold, contrary to the panel majority whose opinion generated this en banc proceeding, that it does.

## BACKGROUND

Appellant Aviall Services, Inc., purchased from appellee Cooper Industries, Inc. property in Dallas, Texas, that was contaminated with various hazardous substances. After prodding from the Texas Natural Resource Conservation Commission (TNRCC), Aviall began cleaning up the property.[2] The federal Environmental Protection Agency (EPA) never contacted Aviall or designated the property as contaminated. To recover some of the millions of dollars it had incurred in cleanup expenses, Aviall sued Cooper in the district court seeking contribution under CERCLA and damages under state law theories. Cooper filed counterclaims. Both Cooper and Aviall concede that they are PRPs under CERCLA because they contributed to the contamination of the property. Aviall Servs., Inc. v. Cooper Indus., Inc., 263 F.3d 134, 137 (5th Cir. 2001).

Holding that Aviall could not yet assert a claim for contribution under CERCLA because it had not been subjected to an action under §§ 106 or 107(a), the district court granted summary judgment for Cooper on Aviall's CERCLA claim, dismissed it without

---

[2]The TNRCC sent letters instructing Aviall to undertake various investigation and remediation activities. The first such letter, styled a "Corrective Action Directive," contained a detailed list of required activities. Two later letters cited alleged violations of regulations and statutory provisions and indicated that enforcement action would be sought "[i]f you fail to adequately respond." A fourth letter promised enforcement action if Aviall failed to pursue one of two suggested remediation options.

2

prejudice, and declined to exercise supplemental jurisdiction over the parties' state law claims. Aviall appealed.

A divided panel of this court affirmed, holding that "a PRP seeking contribution from other PRPs under § 113(f)(1) must have a pending or adjudged § 106 administrative order or § 107(a) cost recovery action against it." Aviall Servs., Inc., 263 F.3d at 145. For this conclusion, the panel majority relied primarily on its textual interpretation of § 113(f)(1) of CERCLA, which provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1) (2000). The panel read the first sentence of § 113(f)(1) to "require[] a PRP seeking contribution from other PRPs to have filed a § 113(f)(1) claim 'during or following' a federal CERCLA action against it." Aviall Servs., Inc., 263 F.3d at 138. The term "contribution" was understood to "require[] a tortfeasor to first face judgment before it can seek contribution

3

from other parties," id., and the term "may" in the first sentence of § 113(f)(1) was viewed by the majority as creating "an exclusive cause of action and mean[ing] 'shall' or 'must.'" Id. at 138-39. Compare Resolution Trust Corp. v. Miramon, 22 F.3d 1357 (5th Cir. 1994). As for the final sentence of § 113(f)(1) -- sometimes referred to as the "savings clause" -- the panel read this "to mean that the statute does not affect a party's ability to bring contribution actions based on state law." Id. at 139. (emphasis in original). The panel majority believed that interpreting the savings clause "to allow contribution suits, regardless of whether the parties are CERCLA defendants in a § 106 or § 107(a) action," would "render superfluous the first sentence of § 113(f)(1), the enabling clause," id., and thus, would violate the canon of statutory construction that a specific provision governs over a general provision. Id. at 140.

Judge Wiener dissented, furnishing the alternative interpretation of § 113(f)(1) that we adopt here and pointing out that the great majority of circuit courts implicitly reject the panel majority's conclusion.

Because of the importance of this question to the allocation of financial responsibility for CERCLA cleanups, we granted Aviall's petition for en banc rehearing.

4

**DISCUSSION**

Statutory construction begins with the plain language of a statute, but "plain" does not always mean "indisputable" or "pellucid." Consequently, sound interpretation reconciles the text of a disputed provision with the structure of the law of which it is a part; may draw strength from the history of enactment of the provision; and acknowledges the legislature's general policies so that the interpretation does not become absurd.[3]

Reasonable minds can differ over the interpretation of section 113(f)(1), because its syntax is confused, its grammar inexact and its relationship to other CERCLA provisions ambiguous. Using the above tools, however, we adopt what we consider the most reasonable interpretation of the provision. To facilitate the discussion, we first state the preferred interpretation and compare

---

[3]Crandon v. United States, 494 U.S. 152, 158, 110 S. Ct. 997, 1001, 108 L. Ed. 2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."); Perrone v. General Motors Acceptance Corp., 232 F.3d 433, 440 (5th Cir. 2000) (stating that use of legislative history is appropriate where statutory text is "opaque," "translucent," or "ambiguous"), cert. denied, 532 U.S. 971 (2001); United States v. A Female Juvenile, 103 F.3d 14, 16-17 (5th Cir. 1996) ("Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result."); In re Timbers of Inwood Forest Assocs., Ltd., 793 F.2d 1380, 1384 (5th Cir. 1986) ("Each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole. Thus it is not proper to confine interpretation to the one section to be construed.").

it briefly with the interpretation advocated by the panel majority. Prefatory to defending our interpretation, a review of the statutory and decisional background leading to the passage of § 113(f) will be helpful.

The en banc majority concludes that section 113(f)(1) does not constrain a PRP for covered pollutant discharges from suing other PRPs for contribution only "during or following" litigation commenced under sections 106 or 107(a) of CERCLA. Instead, a PRP may sue at any time for contribution under federal law to recover costs it has incurred in remediating a CERCLA site. Section 113(f)(1) authorizes suits against PRPs in both its first and last sentence which states without qualification that "nothing" in the section shall "diminish" any person's right to bring a contribution action in the absence of a section 106 or section 107(a) action.

The dissent's narrow textual interpretation is flawed for several reasons.[4] Regarding the first sentence, it focuses unduly on the phrase "during or following", and it implicitly interprets "civil action" to include administrative remedial orders only when the government files suit to enforce them in federal court. It narrows the last sentence arbitrarily and without textual support to the preservation of state law contribution claims. Finally, the

---

[4]The dissent modifies the panel majority's interpretation somewhat. This opinion responds only to the dissent.

6

dissent's interpretation distorts the interplay of the first and last sentences and fails to make sense against the background of caselaw and other interpretive guideposts.

## I. Background - Why Section 113(f) Was Needed

CERCLA was enacted in 1980 to establish a means of controlling and financing governmental and private cleanups of hazardous releases at abandoned and inactive waste disposal sites. CERCLA's twin purposes are to promote prompt and effective cleanup of hazardous waste sites and the sharing of financial responsibility among the parties whose actions created the hazards. See, e.g., OHM Remediation Servs. v. Evans Cooperage Co., 116 F.3d 1574, 1578 (5th Cir. 1997); Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 880 (9th Cir. 2001) (en banc), cert. denied, 122 S. Ct. 1437 (2002). Under the statute, the EPA possesses broad powers to remediate sites itself and require "covered persons" (PRPs) to reimburse the government's costs, and to compel PRPs to perform the cleanups by administrative order or court action. 42 U.S.C. §§ 9604, 9606(a) (2000). The definition of "covered persons" encompasses nearly all those who have or had contact with a particular site.[5] Further, every PRP is jointly and severally

---

[5]The four classes of "covered persons" include (1) current owners and operators of vessels or facilities where hazardous substances were disposed of; (2) past owners or operators of any such facilities; (3) persons who arranged for transport for disposal or treatment of hazardous substances; and (4) persons who accepted any such substances for transport to disposal or treatment facilities. 42 U.S.C. § 9607(a) (2000), 42 U.S.C. § 9607(a) (2000). While three defenses are enumerated in the statute, they are not routinely available to PRPs. See Susan

liable unless it can prove the specific amount of harm it caused. See generally Bell Petroleum Servs. v. Sequa Corp., 3 F.3d 889, 894-902 (5th Cir. 1993) (applying principles of apportionment found in Restatement (Second) of Torts to CERCLA liability). These circumstances, together with the enormous costs of remediating hazardous waste sites, make the availability of contribution among PRPs all the more important for achieving the purposes of the statute – that those responsible for environmental damage to sites, not other parties, properly bear the costs of their actions, and that the sites are actually cleaned up.

As enacted, however, CERCLA contained no explicit provision allowing recovery through contribution. Federal courts soon began articulating a federal common law right of contribution to resolve claims among PRPs. The seminal decision is City of Philadelphia v. Stepan Chem. Co., 544 F. Supp. 1135 (E.D. Pa. 1982), in which the City of Philadelphia sued another PRP for cleanup costs. Neither the federal nor state governments had brought suit against the city under CERCLA, id. at 1143, and there is no indication in the opinion that the city had been sued or been the object of a CERCLA administrative cleanup order. The district court rejected the defendants' argument that because the city was subject to liability under the statute, it could not recover its

M. Cooke and Christopher P. Davis, The Law of Hazardous Waste: Management, Cleanup, Liability, and Litigation § 13.01[5][c], at 13-70.17.

8

cleanup costs from other responsible parties.  Id. at 1141–42.  See also NL Indus., Inc. v. Kaplan, 792 F.2d 896 (9th Cir. 1986)(what amounted to a CERCLA action for contribution allowed to proceed in absence of lawsuit or federal administrative action against the contribution plaintiff under sections 106 or 107); Pinole Point Prop., Inc. v. Bethlehem Steel Corp., 596 F. Supp. 283 (N.D. Cal. 1984) (plaintiff, itself a PRP, could seek recovery under CERCLA § 107(a)(4)(B) for its response costs where no governmental action had been taken).[6]

Several other published federal decisions allowed CERCLA actions for recovery in the nature of contribution to proceed even though the plaintiff had not been sued under § 106 or § 107.[7]  In

---

[6]See Sand Springs Home v. Interplastic Corp., 670 F. Supp. 913, 916 (N.D. Okla. 1987) (relying on Stepan Chem. Co. in concluding "that under 42 U.S.C. § 9607(a)(4)(B), a private party, even though a responsible party under CERCLA, who voluntarily pays CERCLA response costs may bring an action in its own behalf to collect cleanup costs against the parties allegedly responsible for the production and dumping of hazardous wastes").

[7]See, e.g., Wickland Oil Terminals v. ASARCO, Inc., 792 F.2d 887, 889 (9th Cir. 1986) (state agencies required site owner to test waste substances; owner sued prior owner for costs incurred; action allowed to proceed; appeal decided on same day as NL Indus., Inc.); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074 (1st Cir. 1986); City of New York v. Exxon Corp., 633 F. Supp. 609, 612-13, 615-18 (S.D.N.Y. 1986) (city, which owned and operated landfills, sued corporations that generated and transported wastes dumped at landfills; court denied motions to dismiss city's § 107 claims).  Cf. Cadillac Fairview/California, Inc. v. Dow Chem. Co., 299 F.3d 1019, 1024 (9th Cir. 2002) (owner sued other PRPs in 1983 for damages to cover expenses of investigating soil pollution; no indication in opinion that owner was sued beforehand; prior opinion in case, rejecting argument that prior governmental action was required for owner's suit to proceed, states that testing activities were undertaken at request of state

particular, this court held that prior government involvement was not a prerequisite to recoupment of § 107 response costs by one group of PRPs against other PRPs. Tanglewood E. Homeowners Ass'n v. Charles-Thomas, Inc., 849 F.2d 1568, 1575 (5th Cir. 1988). Whether the cases actually used the label "contribution" is irrelevant, as an action brought by a PRP for response costs against another PRP is inherently one for contribution.[8] And even if the first PRP recovers 100% of its costs from the second PRP, that does not makes its recovery any less a recovery in contribution.[9]

---

officials, 840 F.2d 691, 692-93 (9th Cir. 1988)); Allied Towing Corp. v. Great E. Petroleum Corp., 642 F. Supp. 1339, 1347-1350, 1352 (E.D. Va. 1986) (plaintiff transporter of hazardous substance sued defendants for remedial costs arising from loading of substance onto plaintiff's barge; although concluding that complaint stated claim for cost recovery under CERCLA § 107, court granted at least two defendants' motion to dismiss § 107 claim on other grounds; unclear whether court dismissed claim as to other defendants).

[8]See, e.g., Bedford Affiliates v. Sills, 156 F.3d 416, 423-24 (2nd Cir. 1998); United States v. Colorado & E. R.R. Co., 50 F.3d 1530, 1536 (10th Cir. 1995) ("There is no disagreement that both parties are PRPs by virtue of their past or present ownership of the site; therefore, any claim that would reapportion costs between these parties is the quintessential claim for contribution."); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994).

[9]Cadillac Fairview/California, Inc., 299 F.3d at 1026 (no abuse of discretion for trial court to allocate 100% of contribution liability to defendant United States); Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc., 240 F.3d 534, 549 (6th Cir. 2001) (no abuse of discretion for trial court to allocate total contribution liability to defendant); PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 615-16 (7th Cir. 1998) (100% contribution award to plaintiff not an abuse of discretion even though plaintiff engaged in some dumping). But cf. Bedford Affiliates, 156 F.3d at 424 ("one potentially responsible person can never recover 100 percent of the response costs from others similarly situated since it is a

The Supreme Court expressly acknowledged this development of federal common law when it held that § 107 of CERCLA "impliedly authorizes" a cause of action for contribution. Key Tronic Corp. v. United States, 511 U.S. 809, 816, 114 S. Ct. 1960, 1965-66 (1994) (citing Stepan Chemical and others of the foregoing cases). Ironically, the Court was in part responsible for Congress's enactment of an express statutory provision for contribution among PRPs. Decisions it rendered in the early 1980s, which were cited in the legislative history concerning § 113(f), had cast doubt on the ability of federal courts to fashion implied rights of contribution under federal statutes. See Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639-40, 101 S. Ct. 2061, 2066-67 (1981); Northwest Airlines, Inc. v. Transp. Workers Union of Amer., 451 U.S. 77, 91-95, 101 S. Ct. 1571, 1580-83, 67 L.Ed.2d 750 (1981).

Congress passed § 113(f) against this statutory and decisional background. First, a way had to be found to encourage cost-sharing among PRPs. Second, lower federal courts were implementing, albeit unevenly, contribution rights that did not depend on pre-existing EPA administrative orders and that did not arise solely "during or following" CERCLA enforcement actions. Third, the Supreme Court had cast doubt on the availability *vel non*

---

joint tortfeasor – and not an innocent party -- that ultimately must bear its pro rata share of cleanup costs under § 107(a)").

11

of federal common law contribution claims, arguably including those under CERCLA. Section 113(f) was born as the "machinery" to govern and regulate actions for contribution, "providing the details and explicit recognition that were missing from the text of § 107." Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1302 (9th Cir. 1997).[10] Section 113(f) was enacted as part of the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub. L. No. 99-499, 100 Stat. 1613 (1986).

We conclude this section with a brief and cautious review of the legislative history of § 113(f). Legislative history should be consulted gingerly, if at all, in aid of statutory construction. Boureslan v. ARAMCO, 857 F.2d 1014, 1018 (5th Cir. 1988), adopted en banc 892 F.2d 1271 (5th Cir. 1990), aff'd. sub nom., E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244 (1991). Caution is even more necessary here, for CERCLA is notorious for vaguely drafted provisions and an inconclusive, if not contradictory, legislative history. Bell Petroleum Servs., 3 F.3d at 901 n.13 (quoting Amoco, Inc. v. Borden, 889 F.2d 664, 667 (5th Cir. 1989)). Only a few general observations can be drawn from the available legislative history materials.

---

[10]See also Sun Co. v. Browning-Ferris, Inc., 124 F.3d 1187, 1191 (10th Cir. 1997) (a § 113(f) contribution action "is an action for recovery of the costs referred to in § 107"); Geraghty & Miller, Inc. v. Conoco, Inc., 234 F.3d 917, 924 (5th Cir. 2000) (same), cert. denied, 533 U.S. 950 (2001).

First, the avowed purpose of § 113(f)(1) was to give PRPs the "explicit right to sue" for contribution and to "confirm" the decisions of federal courts that had so construed CERCLA. See, e.g., H.R. Rep. No. 99-253, pt. I, at 59, 79 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2841, 2861; S. Rep. No. 99-11, at 44 (1985).[11] See also 131 Cong. Rec. 24,450 (1985) (statement of Sen. Stafford (predicting that § 9613 would "remove[] any doubt as to the right of contribution")). Cf. William D. Araiza, Text, Purpose and Facts: The Relationship Between CERCLA Sections 107 and 113, 72 Notre Dame L. Rev. 193, 224-26 (1996).

Second, Congress emphasized in SARA that it had previously encouraged the federal courts to devise equitable solutions for apportioning waste site cleanup costs among numerous PRPs:

> No change has been made in the standard of liability that applies under CERCLA. . . . [L]iability under CERCLA is strict, that is, without regard to fault or willfulness. Where appropriate, liability under CERCLA is also joint and several, as a matter of federal common law.
>
> Explicit mention of joint and several liability was deleted from CERCLA in 1980 to allow courts to establish the scope of

---

[11]Both of these reports refer to earlier versions of § 113(f)(1) that differ from the enacted version in a number of respects, particularly in their keying of contribution to entry of a judgment, S. Rep. No. 99-11, at 90, or a "defendant alleged or held to be liable." H. R. Rep. No. 99-253, pt. III, at 18 (1995), reprinted in 1986 U.S.C.C.A.N. 2835, 3041. Like the enacted version, both of the earlier versions contained "savings clauses."

> liability through a case-by-case application of "traditional and evolving principles of common law" and pre-existing statutory law. <u>The courts have made substantial progress in doing so.</u> The Committee fully subscribes to the reasoning of the court in the seminal case of <u>United States v. Chem-Dyne Corp.</u>, 572 F. Supp. 802 (S.D. Ohio 1983), which established a uniform federal rule allowing for joint and several liability in appropriate CERCLA cases.

H.R. Rep. No. 99-253, pt. I, at 74 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2856 (citations omitted) (emphasis added).[12] Another federal district court decision cited favorably in the legislative history expressly extends this common law process of development to contribution actions. <u>United States v. South Carolina Recycling and Disposal, Inc.</u>, 653 F. Supp. 984, 995 n.8 (D.S.C. 1984), <u>aff'd in part, vacated in part on other grounds sub nom.</u> <u>United States v. Monsanto Co.</u>, 858 F.2d 160 (4th Cir. 1988), <u>cited in</u> House Report No. 99-253, pt. I, at 79 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2861, <u>and cited in</u> S. Rep. No. 99-11, at 44 (1985).[13]

---

[12]The <u>Chem-Dyne</u> decision, expressly referring to contribution in its discussion, concluded that Congress intentionally omitted the term "joint and several liability" so as "to avoid a mandatory legislative standard applicable in all situations which might produce inequitable results in some cases." 572 F. Supp. at 807 n.3 and 808. "The deletion was not intended as a rejection of joint and several liability. Rather, the term was omitted in order to have the scope of liability determined under common law principles . . . ." <u>Id.</u>

[13]<u>See</u> H.R. Rep. No. 99-253, pt. I, at 80 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2862 ("As with joint and several liability issues, contribution claims will be resolved pursuant to Federal common law. Although the only defenses to liability remain those set forth in section 107(b), courts are to resolve such claims on a case-by-case basis, taking into account relevant

Third, although snippets of the legislative history suggest that Congress intended to remove any doubt that the right of contribution was available <u>after</u> the person seeking contribution had been sued under section 106 or 107,[14] these statements are contradicted by others and, as noted, pertain to much different versions of § 113(f) that were not ultimately adopted. See <u>Aviall Servs., Inc.</u>, 263 F.3d at 151 (Wiener, J., dissenting).

The mixed and shifting signals from legislative history yield no guide that should color the textual interpretation of § 113(f)(1). Yet, it would seem odd that a legislature concerned with clarifying the right to contribution among PRPs and with facilitating the courts' development of federal common law

---

equitable considerations.").

[14]S. Rep. No. 99-11, at 44 (1985) ("This amendment clarifies and confirms the right of a person <u>held jointly and severally liable</u> under CERCLA to seek contribution from other potentially liable parties . . .") (emphasis added); H.R. Rep. No. 99-253, pt. I, at 79 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2861 ("The section also confirms a Federal right of contribution or indemnification for persons <u>alleged or held to be liable</u> under section 106 or 107 of CERCLA . . . . This section clarifies and confirms the right of a person <u>held jointly and seve[]rally liable</u> under CERCLA to seek contribution from other potentially liable parties . . . .") (emphasis added); H.R. Rep. No. 99-253, pt. III, at 18 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 3041, <u>quoted in</u> n.10, supra; H.R. Rep. No. 99-253, pt. V, at 24 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 3147 ("New subsection (g) expressly recognizes the right to contribution. Any defendant alleged or held to be liable in an action under section 106 or 107 may bring an action for contribution or indemnity against any other person liable or potentially liable."). <u>But cf.</u> H.R. Rep. No. 99-253, pt. I, at 59 (1985), <u>reprinted in</u> 1986 U.S.C.C.A.N. 2835, 2841 ("The bill would give potentially responsible parties the explicit right to sue other liable or potentially liable parties who also may be responsible for the hazardous waste site."); <u>id.</u> at 266, <u>reprinted in</u> 1986 U.S.C.C.A.N. at 2940 (separate and dissenting views of Members of Congress) ("The section would also establish a federal right of contribution or indemnity for persons <u>liable</u> under section 106 or § 107 of current law . . . .") (emphasis added).

15

apportionment principles would have rather arbitrarily cut back the then-prevailing standard of contribution.  In no event does the history "overwhelmingly support" the panel majority's narrow view of the statute.  Id. at 140.

For sixteen years, Sections 113(f) and 107 have governed the availability of contribution actions under CERCLA.  As the Supreme Court explained it, CERCLA, as amended by SARA, authorizes two kinds of contribution actions among PRPs, one that is explicit under § 113(f) and another that is an "implied," "similar and somewhat overlapping" action pursuant to § 107.  Key Tronic Corp., 511 U.S. at 816, 114 S. Ct. at 1965-66.[15]  To the statute we turn.

## II. Statutory Text

This court's expansive reading of § 113(f)(1) - which enables a claim by a PRP "at whatever time in the cleanup process

---

[15]The parties dispute whether Aviall's pleadings seek contribution under the § 107 implied action as well as under § 113(f)(1).  It is unnecessary to reach this question or to opine more concretely on the theoretical problems surrounding this "overlap" of remedies. See OHM Remediation Servs., 116 F.3d at 1571 (SARA amendments "codified the federal common law rights of contribution"), United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994) ("Congress, in enacting SARA, sought to codify the case law" holding that § 107 conferred implied right of action among PRPs for contribution); but see In re Reading Co., 115 F.3d 1111, 1117-21 (3d Cir. 1997) (holding that § 113(f) is the exclusive statutory vehicle for contribution claims and specifically rejecting "dictum" in Key Tronic about "overlapping" contribution actions, 511 U.S. at 816, 114 S. Ct. at 1966).

16

the party, seeking contribution, decides to pursue it"[16] – suits its text better than the restrictive reading adopted by the dissent.

The first point of disagreement between the dissent and the en banc majority is over the exclusivity of the claim for contribution described in the first sentence of § 113(f)(1). Does its allowance of contribution actions "during or following" a § 106 or § 107(a) civil action mean that contribution actions are "only" allowed in such circumstances? We think not. The dissent's interpretation of the first sentence of § 113(f) departs from "plain meaning" in several ways. "Only," for instance, is the word choice of the dissent, not of Congress, which characterized the actions permissively (a PRP "may" bring an action for contribution). Elsewhere in CERCLA, Congress used "only" many times, signifying its intent to narrow, exclude or define provisions.[17] Had Congress similarly intended to make contribution

---

[16]See In re Reading Co., 115 F.3d at 1120: "Indeed, the fact that § 113(f)(1) specifically permits an action for contribution to be brought 'in the absence of a civil action under . . . section [107]' reenforces our conclusion that Congress intended § 113 to be the sole means for seeking contribution – at whatever time in the cleanup process the party, seeking contribution, decides to pursue it." We subscribe to the portion of the court's statement quoted above in the text, but have doubts about its exclusivity contention. See n. 13, supra.

[17]See, e.g., 42 U.S.C. § 9607(a) (2000) ("Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section . . ."); 42 U.S.C. § 9613(a) (2000) ("Review of any regulation promulgated under this chapter may be had upon application by any interested person only in the Circuit Court of Appeals of the United States for the District of Columbia."); 42 U.S.C. § 9613(j)(3) (2000) ("If the court finds that the selection of the response action was arbitrary and capricious or otherwise not in accordance with law, the court shall award (A) only the response costs or damages that are not inconsistent with the national Contingency Plan, . . ."); 42 U.S.C. § 9624(b) (2000) ("In the case of any release or

17

actions available "only" after the referenced CERCLA lawsuits have been brought, it could have done so.

After adding "only" to the first sentence of § 113(f)(1), the panel revised "may" to mean "shall," and thus rendered contribution claims available exclusively during or following certain CERCLA civil actions. The dissent then implicitly defines "civil action" to include a federal administrative enforcement proceeding but only when the administrative order is contested or enforced in federal court. No one doubts the importance of permitting contribution claims when administrative enforcement actions are underway. Other courts have authorized such claims.[18] But the dissent has effectively limited the availability of such actions by requiring prior initiation of a lawsuit by the federal government. This interpretation would be unnecessary if the dissent had accorded the properly broad scope to the last sentence of § 113(f)(1) and considered the first sentence, as we do, to be

---

threatened release referred to in paragraph (1), the owner or operator of the equipment described in subsection (a) of this section shall be liable under this chapter only for costs or damages primarily caused by the activities of such owner or operator."). (emphasis added).

[18]See, e.g., Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344 (6th Cir. 1998) (allowing CERCLA action for contribution to proceed after issuance of federal administrative order but prior to initiation of suit by any party under section 106 or 107); Sun Co., 124 F.3d at 1189 (same).

a statement of non-exclusive circumstances in which actions for contribution may be brought.[19]

The final point of contention concerns the inter-relationship of the first and last sentences of § 113(f)(1). Despite the unusual syntax of this subsection, the en banc court finds these sentences logically complementary, if somewhat unusual in this regard. Thus, in addition to affording a particular right of contribution in the first sentence, the provision emphasizes in its last sentence that "nothing" shall "diminish" any other contribution right available to the parties. This so-called "savings provision" takes on added meaning in light of the pre-SARA caselaw, which did not restrict common law contribution actions until during or after proceedings or civil actions against the party who had incurred disproportionate remediation and response costs.

The dissent, however, is driven to a narrow view of the "savings provision" for fear that any different reading would vitiate the effect of the first sentence of § 113(f)(1).[20] The

---

[19]The dissent now concedes, contrary to the panel majority, that a § 113(f)(1) contribution action may be brought before a judgment is entered, but given their restrictive reading of the provision, that is not much of a concession.

[20]See TRW Inc. v. Andrews, 534 U.S. 19, __, 122 S. Ct. 441, 449 (2001) (if it can be prevented, no part of a statute, not even a word, should be rendered "superfluous, void, or insignificant") (internal quotation marks omitted); Dunn v. Commodity Futures Trading Comm'n, 519 U.S. 465, 472, 117 S. Ct. 913, 917 (1997) ("legislative enactments should not be construed to render their provisions mere surplusage").

dissent reads the "savings provision" to refer to actions for contribution under <u>state</u> law, implicitly rejecting among other things a construction that would preserve contribution actions arising by federal common law under § 107. Taken together with its exclusive view of the first sentence of § 113(f)(1), the panel's interpretation is at least in tension with the Supreme Court's description of CERCLA contribution:

> Thus the statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107.

<u>Key Tronic Corp.</u>, 511 U.S. at 816, 114 S. Ct. at 1965-66. It is not clear that the dissent's holding permits an implied § 107 contribution right to coexist.

This is not a situation in which the text of the savings clause robs the first sentence of § 113(f)(1) of its meaning, as the dissent contends. Instead, the provision was enacted as confirmation that federal courts, in cases decided prior to SARA's enactment, had been right to enable PRPs to recover a proportionate share of their costs in actions for contribution against other PRPs. Confirmation of this sort was needed to eliminate the uncertainty in the case law prior to SARA's enactment as to whether contribution was available under CERCLA at all. <u>See</u> <u>OHM Remediation Servs.</u>, 116 F.3d at 1581 (Garza, J.); <u>New Castle County v. Halliburton NUS Corp.</u>, 111 F.3d 1116, 1122 (3d Cir. 1997). The first and last sentences of § 113(f)(1) combine to afford the

20

maximum latitude to parties involved in the complex and costly business of hazardous waste site cleanups.

### III. Decisions of This Court and Other Courts of Appeals After Enactment of SARA

In numerous published cases decided after the enactment of SARA in 1986, this and other courts of appeals have ruled on CERCLA claims for contribution where no action had been brought under § 106 or § 107 of CERCLA.[21] Hardly any of the decisions have

---

[21]In the following cases, no action under § 106 or § 107 -- and no federal administrative proceeding -- had been brought before suit for contribution was initiated under § 113(f): Bedford Affiliates, 156 F.3d 416 (2nd Cir. 1998) (after negotiations with state agency, Bedford Affiliates agreed in consent order to begin cleanup, in course of which Bedford commenced action for contribution); Crofton Ventures Ltd. P'ship v. G & H P'ship, 258 F.3d 292, 294 (4th Cir. 2001) (Crofton Ventures notified state agency of contamination, cleaned up facility under agency's "supervision," then sued for contribution under § 113(f)); Amoco, Inc., 889 F.3d at 672-73 (Amoco brought action against Borden "for contribution" after being "informed" by state agency of radioactivity); Kalamazoo River Study Group v. Rockwell Int'l Corp., 274 F.3d 1043, 1046 (6th Cir. 2001) (companies entered into consent order with state agency [see 107 F. Supp.2d 817, 819-20 (W.D. Mich. 2000)] to fund remedial investigation and feasibility study, then sued other companies for contribution under CERCLA); PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 613 (7th Cir. 1998) (after state agency "required" PMC to clean up site, PMC brought suit for contribution under § 113(f)); Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 932-33, 935 (8th Cir. 1995) (Control Data reported findings of contamination to state agency, entered into consent decree with agency requiring it to investigate, monitor, and clean up contamination, installed remediation system, and then sued Schloff defendants for contribution); Cadillac Fairview/California, Inc., 299 F.3d at 1024 (owner sued other PRPs for damages to cover expenses of investigating soil pollution; no indication in opinion that owner was sued beforehand; prior opinion in case states that testing activities were undertaken at request of state officials, 840 F.2d 691, 692-93 (9th Cir. 1988)); and Morrison Ents. v. McShares, Inc., 2002 WL 1767540 at *1- *2 & *5 n.2 (10th Cir. Aug. 1, 2002)

explicitly parsed the language of § 113(f)(1),[22] but that fact

weighs more in favor of than against our non-restrictive view of

(after state agency ordered Morrison to investigate
contamination, Morrison hired consulting firm, then sued McShares
for contribution under CERCLA).  See also Fina, Inc. v. ARCO, 200
F.3d 266 (5th Cir. 2000) (action for contribution and cost
recovery under CERCLA).  Cf. New Jersey Turnpike Auth. v. PPG
Indus., Inc., 197 F.3d 96, 99-101, 104 (3d Cir. 1999) (state
agency investigated site contamination in 1980s, issued
directives to contribution defendants beginning in 1988, and
entered into consent orders with them; in 1993, Turnpike
Authority filed suit against contribution defendants; summary
judgment affirmed for defendants on unrelated grounds, but
opinion says Turnpike's "action against other PRPs is properly
characterized as a § 113 action").

[22]One case that seems to have come close, at the very least, to deciding this question is Pinal Creek Group, 118 F.3d 1298, rev'g 926 F. Supp. 1400 (D. Ariz. 1996).  In that case, the Pinal Group voluntarily expended resources to clean up a waste site, then sued other PRPs for the costs of doing so.  Id. at 1300; Pinal Creek Group, 926 F. Supp. at 1402 (after member of Group provided state agency with proposed action plan, agency "approved" plan; Group was formed, then began response activities "[w]ith the approval and under the oversight" of state agency).  The Ninth Circuit rejected Pinal Creek Group's argument that it was entitled to bring a joint and several cost recovery action under § 107.  Id. at 1303.  Instead, the Ninth Circuit concluded that the Group's claim was for contribution, and that § 113 applied to the claim.  Id at 1306.  The Ninth Circuit did not accept the Group's argument that allowing it a cost recovery action was appropriate because it "ha[d] not incurred any liability which would trigger" a contribution claim under § 113(f).  Id. at 1305.  Pinal Creek Group had contended "that the requisite liability only attaches if the government incurs response costs, arguing that before then, no liability exists under § 107(a), and that the Pinal Group's status as a PRP, by itself, does not give rise to a claim for contribution."  Id.  The court rejected this argument.  Although "PRP status, by itself, does not generate liability," a PRP that incurs "necessary costs of response" for a hazardous waste site consistent with the National Contingency Plan thereby "bec[o]me[s] partly responsible for those costs" along with all other PRPs associated with the site, giving rise to a right of contribution under CERCLA.  Id.  Cf. id. at 1306 ("Under § 107, the Pinal Group's responsibility for its own equitable share of the cleanup costs is generated independently of any liability that might arise from response costs incurred by the government.").  In other words, the Group was entitled to bring a claim for contribution simply because it was a PRP that had incurred necessary costs of response consistent with the National Contingency Plan.  See Fireman's Fund Ins. Co., 2002 WL 1792612 at *12 (CERCLA "explicitly authorizes any PRP that has incurred response costs to seek contribution from any other PRP.").

22

the provision.  Given the enormous monetary exposure and the volume of litigation surrounding CERCLA mandates, one must assume that talented attorneys have had sufficient incentive and opportunity to explore statutory lacunae such as those created by a cramped reading of § 113(f)(1).  Yet all that existed before this case arose are isolated dicta.[23]  The absence of direct precedent is like the dog that didn't bark.[24]

Moreover, the reasoning employed by the court in Sun Co., 124 F.3d 1187 (10th Cir. 1997), favors our reading.  In Sun Co., the court held that § 113(f) governs actions for contribution brought by a PRP who had not incurred costs pursuant to a civil action under § 106 or § 107 but was itself subject to an administrative order under § 106.  124 F.3d at 1191.  While deciding which CERCLA statute of limitations to apply to such claims, the court said that "PRPs who, like Plaintiffs here, incur cleanup costs pursuant to a unilateral administrative order (or by

---

[23]See OHM Remediation Servs., 116 F.3d at 1580 ("A § 113(f) contribution action is derivative of an action under § 107(a), if only a pending one."); Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc., 107 F.3d 1235, 1241 (7th Cir. 1997) (stating that CERCLA "appears" to require that an action under § 106 or § 107(a) be "ongoing or already completed" before § 113(f)(1) is available," but noting that such a reading of the statute "seems to provide a disincentive for parties voluntarily to undertake cleanup operations").  But cf. Geraghty & Miller, Inc., 234 F.3d at 924 (describing case involving claim for contribution under § 9613(f) as "a case that is neither a recovery claim under section 107 nor derivative of or responsive to any other formalized dispute").

[24]Arthur Conan Doyle, The Silver Blaze, in Memoirs of Sherlock Holmes _____ (    ).

23

a consent decree, <u>or in some cases, voluntarily</u>) potentially have
an unlimited time in which to bring their contribution claims."
<u>Id.</u> (emphasis added).  <u>See</u> <u>also</u> <u>id.</u> at 1192 ("PRPs who have
incurred costs in some other way [than being sued under § 106 or §
107] are also covered by the language of § 113(f).").[25]

By creating doubt as to the meaning of § 113(f)(1), the
dissent has thrown into uncertainty more than two decades of CERCLA
practice, if the pre-CERCLA common law of contribution is included.
Such a result may not be inconceivable, but it should place a heavy
burden on the dissent to explain how its interpretation is
justified under a "plain meaning" reading of the statute.

## IV. Policy Considerations

The dissent's reading of § 113(f)(1) would also create
substantial obstacles to achieving the purposes of CERCLA -- not
only by slowing the reallocation of cleanup costs from less
culpable PRPs to more culpable PRPs[26] and by discouraging the

---

[25]The court went on to explain how reading CERCLA in this way
does not, in its view, wreak havoc with the framework set up in §
113(g) governing the limitations periods within which various
CERCLA claims may be brought. <u>Sun Co.</u>,  124 F.3d at 1191-93.
Compare <u>Geraghty & Miller, Inc.</u>, 234 F.3d at 924 (adopting <u>Sun
Co.</u>'s reasoning as to "the appropriate statute of limitations to
apply in a [CERCLA] case that is neither a recovery claim under §
107 nor derivative of or responsive to any other formalized
dispute").

[26]This court has acknowledged that allowing parties who have
been sued under CERCLA to bring contribution claims "makes

24

voluntary expenditure of PRP funds on cleanup activities,[27] but by diminishing the incentives for PRPs voluntarily to report contamination to state agencies.  According to the dissent, even if the TNRCC had unambiguously ordered Aviall to engage in cleanup activities, this would not have triggered Aviall's right to contribution under CERCLA for the costs of such activities.  We do not think these effects are required by a faithful reading of the statute.

The dissent hypothesizes that the negative effects of its holding would be mitigated because its reading of the last sentence of § 113(f)(1) allows a PRP to bring an action for contribution under state law.  This is surely an inferior and questionable remedy for Congress to have embraced.  Not all states allow contribution before the party seeking contribution has been

---

possible the joinder of all potentially responsible parties in a single case, an early identification of potentially responsible parties for purposes of settlement, and . . . a single judicial apportionment of cleanup costs among responsible parties." OHM Remediation Servs., 116 F.3d at 1583.  The same purposes are achieved by allowing a PRP who has incurred cleanup costs to bring a contribution suit before he himself has been sued.

[27]"Without the ability to require contribution from other responsible parties, the current operator may prefer to wait and let the government perform the work." Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1465 (9th Cir. 1986) (Reinhardt, J., dissenting).

subjected to judgment.[28] And those that do follow quite different

substantive and procedural rules.[29] Moreover, as the dissent

---

[28]The states vary greatly as to whether and to what extent they allow actions for contribution. As of 2000, six of the states, including Texas, had "contribution statutes limited to contribution between judgment debtors." <u>Restatement (Third) of Torts: Apportionment of Liability</u> § 23 cmt. a reporters' note, at 292 (2000). Texas law does provide, however, that "[a] person who conducts a removal or remedial action that is approved by the commission [that is, by the TNRCC, <u>see</u> Tex. Health & Safety Code Ann. § 361.003(5) (2001)] and is necessary to address a release or threatened release may bring suit in a district court to recover the reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable." Tex. Health & Safety Code Ann. § 361.344(a) (2001). "This right is in addition to the right to file an action for contribution, indemnity, or both in an appeal proceeding or in an action brought by the attorney general." <u>Id.</u> Louisiana law also provides for cost recovery for hazardous substance remedial actions, but its scheme is quite different from Texas's. <u>See, e.g.</u>, La. Rev. Stat. Ann. § 30:2276(G)(1) (West 2000) (providing, <u>inter alia</u>, that "those participating parties who, after an initial demand [for remedial action] is made by the secretary under R.S. 30:2275, agree to clean up the pollution source or facility may, without the institution of a suit by the secretary under R.S. 30:2275, sue and recover from any other nonparticipating party who shall be liable for twice their portion of the remedial costs"). The Mississippi statutes governing disposal of solid wastes, Miss. Code Ann. § 17-17-1 <u>et seq.</u>, do not appear to contain a provision for private cost recovery. <u>See</u> 57 Am. Jur. Trials 1 § 40 (2002). <u>Cf.</u> Miss. Code Ann. § 17-17-29(4) (1995 & Supp. 2002) ("Any person creating, or responsible for creating, through misadventure, happenstance, or otherwise, an immediate necessity for remedial or clean-up action involving solid waste shall be liable for the cost of such remedial or clean-up action and the commission may recover the cost of same by a civil action brought in the circuit court of the county in which venue may lie.").

[29]<u>See Restatement (Third) of Torts: Apportionment of Liability</u> § 23 cmt. a reporters' note, at 291-92 (2000) (describing six categories of state contribution statutes and identifying two states that "recognize contribution without a statute"). <u>Cf.</u> 42 U.S.C. § 9613(f)(1) (2000) (providing that CERCLA contribution "claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law").

acknowledges, some courts of appeals have held that CERCLA preempts state-law claims for contribution for environmental cleanup costs.[30]

Policy considerations cannot change the interpretation of Congress's language, but they can contribute to an understanding of the language. This court's understanding, like that of most courts preceding and following enactment of § 113(f)(1), better fulfills the statutory purposes.

## V.  Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand the case for proceedings consistent with this opinion. This leaves to the district court, for determination in the first instance, two issues previously left unaddressed. 263 F.3d at 137 n.3. The first issue is whether Aviall failed to give timely notice to the EPA and the Attorney General of its action under CERCLA. The second is whether Aviall complied with the National Oil and Hazardous Substances Pollution Contingency Plan (NCP), 40 C.F.R. Part 300, by failing to provide adequate opportunity for public participation. See OHM Remediation Servs., 116 F.3d at 1583 (remanding for similar determinations).

**REVERSED** and **REMANDED**.

---

[30]See Bedford Affiliates, 156 F.3d at 425-27; PMC, Inc., 151 F.3d at 617-18; In re Reading Co., 115 F.3d at 1117. We express no view on the preemption question.

27

EMILIO M. GARZA, Circuit Judge, with whom SMITH and BARKSDALE, Circuit Judges, join, dissenting:

The majority opinion holds that a party may bring an action for contribution under § 113(f)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f)(1)[31], without being subject to a prior or pending § 106 or § 107 action. Because the majority's holding cannot be reconciled with the text or structure of the statute, I dissent.

The majority acknowledges the tenuous nature of its textual analysis by characterizing § 113(f)(1) as a provision whose "syntax is confused, its grammar inexact and its relationship to other

---

[31] Section 113(f)(1) provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. §9613(f)(1).

-29-

CERCLA provisions ambiguous." The text is not so opaque as the majority opinion asserts.

The first sentence of § 113(f)(1) provides: "[a]ny person *may* seek contribution from any other person who is liable or potentially liable under [§ 107(a)], *during or following* any civil action under [§ 106] or under [§ 107(a)]." 42 U.S.C. § 9613(f)(1) (emphasis added). The majority opinion reasons that the word "may" implies that contribution suits are permitted during the pendency of a § 106 or § 107 cost recovery action, but that a § 106 or § 107 action is not a prerequisite to a contribution suit. This analysis is problematic. The inclusion of the word "may" in an enabling provision generally establishes an exclusive cause of action. *See Resolution Trust Corp. v. Miramon*, 22 F.3d 1357, 1361 (5th Cir. 1994) (holding that the word "may," when included as part of an enabling provision, implies an exclusive cause of action); *see also* WEBSTER THIRD NEW INTERNATIONAL DICTIONARY 1396 (3d ed. 1993) (defining "may" as "shall" or "must" "esp[ecially] in deeds, contracts, and statutes"). Thus, the word "may" in the first sentence of § 113(f)(1), the enabling provision, establishes that contribution suits must be brought "during or following" a civil action under § 106 or § 107.

The phrase "during or following" also indicates that § 113(f)(1) is available only after a primary cost recovery action commences. This phrase serves two purposes. First, it reflects

the general legal proposition that contribution actions do not require the *execution* of a final judgment before they can be brought. *See* RESTATEMENT (SECOND) OF TORTS § 886A(1) (1977) ("[W]hen two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, *even though judgment has not been recovered* against all or any of them."(emphasis added)). Second, the phrase "during or following" imposes a limitation on the timing of CERCLA contribution suits. Section 113(f)(1) requires, as its language suggests, that an initial cost recovery action commence before a contribution claim can proceed.[32]

Despite the limiting language in § 113(f)(1)'s enabling clause, the majority opinion concludes that the provision authorizes a party to sue for contribution in *any* circumstance. To justify this conclusion, the majority opinion focuses on the last sentence of § 113(f)(1))the savings clause.[33] However, this clause does not authorize contribution actions under any and all circumstances. Section 113(f)(1)'s savings clause, like CERCLA's general savings clause, is best interpreted as expressly preserving

---

[32] As reflected in its amicus brief to this Court, the Department of Justice, the federal government entity charged with the enforcement of CERCLA, adopts this interpretation.

[33] The savings clause provides: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§106] or [§107]." 42 U.S.C. § 9613(f)(1).

*state law* causes of action.[34]  When Congress meant to preserve *both* federal and state law causes of action, it said so explicitly.  *See* 42 U.S.C. § 9652(d) (CERCLA's general savings clause provides: "Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants"); *see also PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617 (7th Cir. 1998) ("The purpose of CERCLA's [general] savings clause is to preserve to victims of toxic wastes the other remedies they may have under *federal or state law*.") (emphasis added).[35]

---

[34] Congress's inclusion of the phrase "civil action" provides support for this interpretation. "Civil action," as defined in the Federal Rules of Civil Procedure, has a specific meaning.  FED. R. CIV. P. 2 provides: "[t]here shall be one form of action to be known as a 'civil action.'"  When § 113(f)(1) uses the term "civil action," it is referring to an action brought in federal court.  (Thus , § 113(f) permits contribution actions following an administrative remedial order only when the government files suit in federal court under § 106 to enforce the order.)  This connection is further reinforced by § 113(f)(1)'s additional reference in the following sentence, which provides: "Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by federal law."  42 U.S.C. § 9613(f)(1).  The savings clause, in contrast, references only an "*action* for contribution," which, by the absence of the word "civil," contemplates a proceeding in a non-federal forum, such as state court.

[35] Other circuit court decisions have held that the federal contribution right codified in § 113(f) preempts all state law contribution claims.  *See, e.g.*, *PMC, Inc.*, 151 F.3d at 617-18 (holding § 113 preempts state law contribution actions); *Bedford Affiliates v. Sills*, 156 F.3d 416, 425-27 (2d Cir. 1998) (finding that § 113 preempts state law restitution and indemnification actions); *In re Reading Co.*, 115 F.3d 1111, 1117, 1119-20 (3d Cir. 1997) (holding CERCLA preempts any state law contribution claims).  These decisions do not conflict with the interpretation advanced in this dissent.  Following the reasoning of these courts, if a party does not seek to utilize the federal contribution provisions, it is still free to proceed under state law.

The practical effect of the majority opinion's holding is that § 113(f)(1)'s savings clause overrides its enabling clause. In other words, the enabling clause does nothing more than provide an example of when a contribution action *might* be brought.[36] This conflicts with elementary canons of statutory construction. An enacting sentence containing limiting language cannot be trumped by a savings clause purporting to save all other possible causes of action. Rather, any "repugnancy between the savings clause and the purview does not make the enacting part void but operates to invalidate the savings clause." 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.12 (6th ed. 2000). The majority opinion's interpretation of the savings clause, however, renders the enabling clause inoperative. *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (citing the "elementary canon of statutory construction that a statute should be interpreted so as not to render one part inoperative").

It is also important to note that § 113(f)(1) does not create categories of liability, but rather relies on § 107(a)'s definition of liability and simply apportions costs among the liable parties. *See, e.g., Sun Co., Inc. v. Browning-Ferris, Inc.*, 124 F.3d 1187,

---

[36] It is difficult to imagine that the drafters of § 113 deliberately included ambiguous language in the enabling clause, and then sought to clarify its meaning though the savings clause. *Cf. Resolution Trust Corp. v. Gallagher*, 10 F.3d 416, 420-21 (7th Cir. 1993) (declining to interpret savings clause in FIRREA in a manner that would "swallow up the specific language" of the provision).

1191 (10th Cir. 1997) (stating that § 113 "is no more than a mechanism for apportioning CERCLA-defined costs," and also noting that § 113 incorporates the liabilities set forth in § 107) (internal citations and quotations omitted).  Prior to the passage of SARA, courts implied a contribution right from the language of § 107(a)(4)(B).[37]  The overall structure of CERCLA's liability provisions demonstrates that § 113 is merely a subset of § 107, providing only for the *allocation* of CERCLA-defined liability.  *See Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994) ("Section 107 sets forth the scope of the liabilities that may be imposed on private parties and the defenses that they may assert").[38]

Therefore, a § 113(f)(1) action should be contingent upon the commencement of a prior or pending cost recovery action under § 106 or § 107.

---

[37] CERCLA, as originally enacted, did not include an express contribution provision. Instead, courts implied a contribution right from language in § 107(a)(4)(B).  *See, e.g. Walls v. Waste Res. Corp.*, 761 F.2d 311, 318 (6th Cir. 1985) ("Allowing a private action to recover response costs from responsible parties under [§ 107(a)(4)(B)] is thus consistent with both the language of [§ 107(a)(4)(B)] and with the congressional purpose underlying CERCLA as a whole.").  In 1986, Congress, in an effort to expedite the clean-up of hazardous waste sites, passed the Superfund Amendments and Reauthorization Act ("SARA").  As part of SARA, Congress codified the right to contribution under CERCLA in the provisions set forth in § 113. *See* H.R. REP. No. 99-253(I), at *78-79, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2861 ("It has been held that, when joint and several liability is imposed under section 106 or 107 of the Act, a concomitant right of contribution exists under CERCLA. . . . [§ 113(f)] clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties.").

[38] The majority opinion quotes language from *Key Tronic*, in which the Supreme Court observed that CERLCA, as amended by SARA, "now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107." *Key Tronic*, 511 U.S. at 816.  The Court did indeed acknowledge that both clauses provide parties with a way to recover clean-up costs.  The Court did not find, however, that both clauses provide a way of allocating liability.

The structure of § 113 supports this interpretation.  Section 113(g)(3), which sets out the applicable statute of limitations for contribution actions proceeding under § 113, suggests that a § 113(f)(1) action cannot proceed in the absence of an initial cost recovery action.  This provision sets forth a three-year limitations period, which would begin to run following the date of judgment in a § 106 or § 107 action.[39]  Significantly, the statute is silent as to the limitations period to be applied in the absence of a § 106 or § 107 civil action.  Pursuant to the majority opinion's interpretation of § 113(f)(1), courts would be required to derive from some other source the limitations period to apply in this instance.  Some courts have attempted to do just that, adopting  the limitations period for initial cost recovery actions under § 113(g)(2)[40] and applying it to contribution actions proceeding

[39] Section 113(g)(3) provides:

No action for contribution for any response costs or damages may be commenced more than 3 years after--
>   (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>   (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3).

[40] Section 113(g)(2) provides:

An initial action for recovery of the costs referred to in section 9607 of this title must be commenced--
>   (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
>   (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action

in the absence of a § 106 or § 107 action. *See, e.g., Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 924-25 (5th Cir. 2000) (finding that if there is no prior § 107 action, a § 113(f)(1) contribution must be brought within six years); *Sun Co.*, 124 F.3d at 1191-92 (same); *United Techs. Corp. v. Browning-Ferris Indus., Inc.*, 33 F.3d 96, 103 (1st Cir. 1994) (stating that a contribution action brought in the absence of an underlying § 106 or § 107 action must be brought within three years of the accrual of the right to contribution because contribution and initial cost-recovery actions are distinct remedies). Such herculean efforts are unnecessary. Section 113(g)(3)(A) provides that no action for contribution may be commenced more than three years after "the date of judgment in any action under this chapter for recovery of such costs or damages." 42 U.S.C. § 9613(g)(3)(A). There is no need to look outside of the contribution provisions in § 113(g)(3) to determine the appropriate limitations period.[41]

---

brought under this subparagraph. 42 U.S.C. § 9613(g)(2).

[41] In addition, § 113(f)(2) provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). Section 113(f)(3)(B), in turn, states that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in [§ 113(f)(2)]." 42 U.S.C. § 9613(f)(3)(B). Taken together, these two sections create a powerful mechanism to encourage settlements by Potentially Responsible Parties ("PRPs") by protecting parties who settle from being sued in later contribution actions and granting a contribution right to those PRPs who enter into approved settlements. Allowing a contribution action to proceed in the absence of a pending § 106 or § 107(a) action would undermine these incentives.

In sum, the plain language and statutory structure of CERCLA's contribution provisions demonstrate that the contribution remedy in § 113(f)(1) requires a prior or pending § 106 or § 107 action.[42]

The majority opinion asserts that its interpretation of § 113(f)(1) is supported by existing precedent. However, the question presented here is one of first impression in the courts of appeals.[43]

---

[42] As the majority opinion concedes, the legislative history of § 113(f)(1) does not contradict this statutory analysis. CERCLA did not include an explicit contribution provision until the passage of SARA in 1986. SARA's legislative history suggests that Congress intended to create only a limited federal contribution right when it enacted § 113(f)(1). For example, when explaining § 113(f) to the House of Representatives, the provision was described as "confirm[ing] a Federal right of contribution or indemnification for persons *alleged or held to be liable* under section 106 or 107 of CERCLA and prohibit[ing] the assertion of such rights against a party who has entered into a judicially approved settlement with the EPA." H.R. REP. No. 99-253(I), at *79, *reprinted in* 1986 U.S.C.C.A.N 2835, 2861 (emphasis added). As evidenced by this statement, Congress intended there to be a prior or pending § 106 or § 107 action before a party could seek contribution from other PRPs. Further, when the Judiciary Committee amended a previous version of § 113(f)(1) to provide for contribution actions "during or following" a § 106 or § 107 action, the change was explained as "clarif[ying] and emphasiz[ing] that persons who settle with the EPA (and who are therefore not sued), as well as defendants in CERCLA actions, have a right to seek contribution from other potentially responsible parties." H.R. REP. No. 99-253(III), at *18, *reprinted in* 1986 U.S.C.C.A.N. 3038, 3041. The legislative history of § 113(f)(1) never states that a contribution action can be brought in the absence of a prior or pending cost recovery action. Had Congress intended to create such a broad contribution right, it would have done so explicitly.

[43] While this and other appellate courts have addressed related questions concerning the proper interpretation of § 113(f)(1), none of them have specifically addressed the issue with which we are confronted: whether a § 106 or § 107 action is a statutory prerequisite to a § 113(f)(1) contribution action. *See OHM Remediation Servs. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1582 n.2 (5th Cir. 1997) (permitting contribution claim against third-party defendant, but specifically stating that the court "express[es] no opinion as to whether a party may be considered a PRP before being sued under CERCLA"); *Geraghty & Miller*, 234 F.3d at 925 (analyzing the statute of limitations provisions set forth in § 113(g)(2), and holding that a contribution action must be commenced within three years of the completion of removal action); *Crofton Ventures Ltd. P'ship v. G&H P'ship*, 258 F.3d 292, 297 (4th Cir. 2001) (permitting § 113 action to proceed after state-ordered cleanup, but failing to specifically address the language of § 113(f)(1)); *Bedford Affiliates*, 156 F.3d at 424 (permitting § 113 action after state-ordered cleanup, but never addressing what requirements are imposed by § 113's specific language); *PMC,*

The handful of district courts attempting a statutory analysis of § 113(f)(1) have reached differing

conclusions.[44] Thus, the case law provides no clear guidance on the interpretation of § 113(f)(1).

---

*Inc.*, 151 F.3d at 618 (holding § 113 preempts recovery under state contribution law); *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1306 (9th Cir. 1997) (holding PRP is limited to recovery from other PRPs under § 113, and cannot utilize § 107); *Rumpke of Ind., Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1241 (7th Cir. 1997) (noting in dicta that "a § 106 or § 107(a) action apparently must either be ongoing or already completed before § 113(f)(1) is available"). Because none of these circuit court decisions specifically confront the issue before us, we reject Aviall's contention that our interpretation conflicts with existing precedent. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) (holding that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").

[44] Several district courts have held that contribution under § 113(f)(1) is conditioned on the existence of a prior § 106 or § 107 cost recovery action. *See Estes v. Scotsman Group Inc.*, 16 F. Supp. 2d. 983 (C.D. Ill. 1998); *Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F. Supp. 1384, 1389 (N.D. Ill. 1988) (stating that "[d]efendants are correct that contribution is a remedy available to parties held liable, through judgment or settlement, in some damages actions. To receive any actual compensation through an action for contribution, the party must have been found liable as a defendant in an earlier or pending action.") For instance, in *Estes*, a case whose facts are strikingly similar to those here, a PRP undertook a cleanup of its contaminated property after receiving a letter from the state environmental agency. *Estes*, 16 F. Supp. 2d at 989-90. Following the clean-up, the PRP filed a CERCLA claim against the prior owner under §107(a) and § 113(f)(1). The district court dismissed the PRP's §107(a) cost recovery action and then relied on the plain meaning of the statute to hold that the plaintiff could not seek contribution under § 113(f)(1) because the action was not "during or following" a cost recovery suit. *Id.* at 989 (stating that the "[s]ection 113(f) [claim] should be dismissed because there is no §106 or § 107 claim pending").

In contrast, other district courts have adopted the majority opinion's interpretation and held that a contribution action can proceed in the absence of a prior or pending cost recovery action. *See, e.g.*, *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 208 (D. Conn. 2001) (allowing the plaintiff to assert a contribution claim under § 113(f)(1) in the absence of a pending or adjudged § 107 civil action); *Ninth Ave. Remedial Corp. v. Allis Chalmers Corp.*, 974 F. Supp. 684, 691 (N.D. Ind. 1997) (finding that a "PRP can bring a section 113 action even when no prior or pending section 106 or 107 civil actions have occurred").

The majority opinion supports its analysis by focusing on policy concerns. In particular, the majority opinion asserts that requiring the commencement of a § 106 or § 107 civil action before a § 113 contribution action can be brought undermines CERCLA's goal of promoting prompt and effective clean-ups. The majority opinion's policy justifications ultimately amount to an assertion that there are more effective means of promoting private clean-ups than by conditioning the availability of § 113(f)(1) on a prior federal action or judicially approved settlement. However, when a statute's language and structure are clear, as in this case, it is unnecessary to consider such policy arguments. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."). It is not our role to substitute our judgment for that of Congress when weighing the effectiveness of statutory provisions. Instead, we must adhere to the contribution scheme created by Congress.[45]

---

[45] The majority opinion suggests that the interpretation advanced in this dissent violates the axiom that laws should be construed to avoid an absurd or unreasonable result. The plain meaning of the statute, which requires that a § 106 or § 107 action precede a contribution action under § 113(f)(1), does *not* lead to an absurd result. Contribution is readily available under the statute. The statute sets out three ways in which a party can achieve the right to seek contribution. First, an innocent party may bring a § 107 action against a PRP. Any party named in the § 107 action may subsequently bring a § 113 claim following the commencement of the initial § 107 action. Second, the government may bring an abatement action in federal court pursuant to § 106(b). At any point following the filing of the § 106 action in federal court, a named party can seek contribution from another PRP under § 113(f)(1). Finally, a PRP who has resolved its liability to the United States or a state in an administratively or judicially approved settlement can seek contribution pursuant to § 113(f)(3)(B). *See* H.R. REP. NO. 99-253(I), at *80, *reprinted in* U.S.C.C.A.N. 2385, 2862 ("Parties who settle for all or part of a cleanup or its costs, or who pay judgments as a result of litigation, can attempt to recover some portion of their expenses and obligations in contribution litigation from parties who were not sued in the enforcement action or who were not parties to the settlement."). Taken together, these three methods by which to obtain access to § 113(f)(1) effectively preserve and encourage CERCLA's important goals.

The text of § 113(f)(1) allows a contribution action only for those parties who are subject to a prior or pending § 106 or § 107 cost recovery action. I, therefore, respectfully dissent.

---

Nothing in § 113(f)(1) prevents a PRP from seeking contribution under state law. Section 113(f)(1)'s savings clause specifically preserves other contribution remedies. Aviall itself has taken advantage of state contribution law in its attempt to seek recovery of clean-up costs from Cooper. These alternate contribution remedies may ultimately expedite clean-up of contaminated sites by reducing the burden on the federal government to investigate and oversee all remediation efforts.