**1325 "G" STREET ASSOCIATES, LP**

v.

**ROCKWOOD PIGMENTS NA, INC.**

**Civil Action No. DKC 2002–1622.**

United States District Court,
D. Maryland.

Dec. 20, 2002.

Donald B. Mitchell, Jr., Randall A. Brater, Arent Fox Kinter Plotkin and Kahn PLLC, Washington, DC, for plaintiff.

Warren K. Rich, James J. Doyle, III, Rich and Henderson, PC. Annapolis, MD, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this environmental contamination case filed under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*, is the motion of Defendant Rockwood Pigments NA, Inc. ("Rockwood") to dismiss the complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6). The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court shall deny Defendant's motion to dismiss the complaint.

## I. Background

The following facts are alleged by Plaintiff 1325 G Street Associates Limited Partnership ("1325 G Associates"), a Maryland limited partnership, in its complaint. Defendant Rockwood is the legal successor to a corporation which was called Mineral Pigments Corporation ("Mineral Pigments"). At least since the 1960s, Mineral Pigments manufactured metal-based pigments for use in paints and other products at its facility in Beltsville, Maryland (the "Mineral Pigments Factory"). The Mineral Pigments Factory generated waste materials containing, *inter alia*, chromium, lead, zinc, and cyanide. Since at least 1971, Mineral Pigments disposed of or contracted for the disposal of waste generated at its factory into several mined-out sand and gravel pits. These pits were located on tracts of land owned by the Contee Sand and Gravel Company, Inc. ("the CSG Facility"), about one mile west of the Mineral Pigments Factory. According to Plaintiff, the disposal by Mineral Pigments of its waste at the CSG Facility continued until around 1974. During that period, approximately 50,000 gallons of liquid waste sludge containing, *inter alia*, lead, chromium, and zinc were dumped every two weeks at the CSG Facility.

In June 1982, Plaintiff 1325 G Associates purchased the tracts of land containing the CSG Facility. On October 24, 1984, a local citizen informed the Maryland Department of Health and Hygiene, the predecessor to the Maryland Department of the Environment (both referred to hereafter as "MDE"), that dumping of hazardous waste had occurred at the CSG Facility. MDE inspected the land within days and confirmed that Mineral Pigments had dumped waste into the gravel pits on the CSG Facility in the 1970s. MDE placed the CSG Facility on its list of potential hazardous waste dump sites in Maryland. In April and May, 1986, MDE conducted additional environmental investigations at the CSG Facility and confirmed that releases of, *inter alia*, chromium, lead, and zinc had occurred where Mineral Pigments had dumped its waste. In 1987, a contractor of the United States Environmental Protec-

tion Agency ("EPA") collected samples at the CSG Facility and determined that, *inter alia*, chromium, lead, zinc, and cyanide had been released there.

MDE returned to the CSG Facility thirteen years later, in 2000, to conduct further testing for hazardous materials and confirmed the continuing release in the environment of chromium, lead, zinc, and cyanide. MDE concluded that even more sampling was necessary in order to determine the horizontal and vertical extent of the contamination and requested that Plaintiff conduct the necessary investigation. Plaintiff retained an environmental engineering consulting firm, which conducted an MDE-approved investigation between October, 2001 and February, 2002. The firm concluded in its investigation report that lead, chromium (including hexavalent chromium, a carcinogen), and zinc had been disposed of and released into soil, water, and former sand and gravel pits at the CSG Facility.

Following the sampling by the environmental engineering firm, MDE requested that Plaintiff install a security fence around one of the areas where elevated concentrations of chromium (including hexavalent chromium), lead, and zinc were found. Plaintiff installed the fence in late 2001. MDE has also requested that additional sampling be performed and that interim protective measures be taken. Plaintiff alleges that it has paid or been invoiced approximately $100,000 for the studies by the engineering firm and has also incurred the expense of installing the security fence requested by MDE. Plaintiff claims that it has also paid its counsel significant fees for legal and scientific work related to environmental investigations and identification of responsible parties.

Plaintiff claims that all of these costs constitute "costs of response" within the meaning of 42 U.S.C. § 9607(a) and that the incurrence of these costs of response was caused by the release of hazardous substances by Mineral Pigments. Plaintiff filed this suit against Defendant under 42 U.S.C. § 9607 (CERCLA § 107) seeking recovery for all costs of response incurred by Plaintiff (Count I) and under 42 U.S.C. § 9613 (CERCLA § 113) seeking contribution for an equitable share of all costs of response incurred by Plaintiff (Count II). Plaintiff also seeks a declaratory judgment that Defendant shall be held jointly and severally liable, or liable in contribution, to pay all future costs of response incurred by Plaintiff with regard to the CSG Facility (Count III). Defendant filed a motion to dismiss all counts for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).

## II. Standard of Review

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. v. Air-A–Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting*

*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

## III. Analysis

### A. Count I—Cost Recovery Under CERCLA § 107 [1]

■ Plaintiff seeks recovery from Defendant for all costs of response incurred in conjunction with the hazardous waste problem at the CSG Facility. CERCLA § 107 permits the United States and private parties to recover the costs of cleaning up hazardous waste from "potentially responsible parties." CERCLA case law uses the term "potentially responsible party" ("PRP") to refer to a person who may fall within one of the four categories of CERCLA liable parties in § 107(a). *See Pneumo Abex Corp. v. High Point, Thomasville and Denton R. Co.,* 142 F.3d 769, 773 n. 2 (4th Cir.1998) ("while CERCLA does not define 'potentially responsible party,' the courts have understood it to refer to a party who may be covered by the statute at the time that said party is sued under the statute.") PRPs are held strictly liable for cleanup costs, subject only to CERCLA's limited defenses. *Id.* at 774.

Defendant argues in its motion to dismiss, citing *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.,* 191 F.3d 409, 415 (4th Cir.1999), that Plaintiff cannot assert a claim for cost recovery under CERCLA § 107 because Plaintiff itself is a potentially responsible party ("PRP").[2] In *Axel Johnson,* the court stated that "[e]very circuit that has addressed the question, including this one, has held that parties ... who are potentially responsible for cleanup costs under § 107 cannot bring § 107 cost recovery actions; rather, such parties 'must seek contribution' under § 113." *Id.* Plaintiff responds in its opposition motion that even a PRP may bring a CERCLA § 107 cost recovery action in circumstances in which the PRP is a potentially innocent current landowner. Paper no. 7 at 9–11.

The availability of an "innocent landowner" exception to the prohibition on a PRP to bring a § 107 cost recovery action has not yet been decided in this circuit. The Fourth Circuit recently discussed the "in-

1. It is common practice to refer to CERCLA sections by their statutory section numbers. In Title 42 of the United States Code, where CERCLA is codified, most of the CERCLA section numbers remain the same, except for the substitution of "96" for the "1" in the statutory section number. For the sake of simplicity, the court will refer in this opinion to the statutory section numbers, except where this convention does not apply.

2. As a current owner and operator of a site where hazardous substances have been released, Plaintiff is itself a PRP even if it did not own the property at the time the hazardous waste disposal occurred. *See Sherwin-Williams v. Artra Group, Inc., et al.,* 125 F.Supp.2d 739, 745 (D.Md.2001).

nocent party" exception in *Axel Johnson,* noting that only a few circuits have recognized an exception of this kind. *See Axel Johnson, Inc.,* 191 F.3d at 416 (citing *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1120 (3d Cir.1997); *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir.1996); *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994)). The court declined to address the question of whether the innocent party exception exists, but it nevertheless laid out specifications for such an exception. *Id.* The court stated that if there was such an exception, it would be "prudent to limit its applicability to those who can make out one of the defenses to liability that § 107 itself provides." *Id.* (citing 42 U.S.C.A. § 9607(b)(3); CERCLA § 107(b)(3)). The elements of the so-called "innocent landowner" or "third party" defense are: (1) that another party was the sole cause of the release of hazardous substances and the resulting damages; (2) that the defendant exercised due care with respect to the hazardous substance concerned and guarded against the forseeable acts or omissions of the responsible party; and (3) that the defendant conducted all appropriate inquiry consistent with good commercial practice at the time. *See* CERCLA §§ 107(b)(3), 101(35); *Westfarm Associates Ltd. Partnership v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 682 (4th Cir.1995). The *Axel Johnson* court further noted that the few cases that have recognized the possibility of an innocent party exception have made the exception applicable only "when the plaintiff is truly innocent of *any* pollution." *Id.* (citing *Rumpke of Indiana, Inc. v. Cummins Engine Co.,* 107 F.3d 1235, 1238 (7th Cir. 1997)) (emphasis in original). The court ruled, however, that the plaintiff in *Axel Johnson* would not be entitled to such an exception, if it existed, because the plaintiff was indisputably responsible for at least some of the hazardous materials spilled at the property.[3] *See id.*

■ In contrast to the plaintiffs in *Axel Johnson* and *Sherwin–Williams,* it is not clear that Plaintiff in the instant case has itself contributed to hazardous waste on the property. Moreover, Plaintiff has successfully alleged the elements of the "innocent landowner" defense: (1) that another party (Defendant) was the sole cause of the release of the hazardous substances at the CSG Facility (Paper no. 1, ¶¶ 39–41); (2) that Plaintiff exercised due care with respect to the hazardous substances by assisting the MDE and complying with its requests for precautionary and remedial measures (Paper no. 1, ¶¶ 22–26); and (3) that Plaintiff did not know at the time it purchased the CSG Facility, and under the commercially reasonable standards of the time could not know, that hazardous substances had been dumped there (Paper no. 1, ¶ 41). Plaintiff has further alleged that it is "innocent of any pollution at the CSG Facility." Paper no. 1, ¶ 41a. Because this case is at the motion to dismiss stage, the court must accept "all well-pled allegations of the complaint as true and construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra,* 120 F.3d at 473. Accordingly, the court ac-

---

**3.** Similarly, this court recently considered and rejected a plaintiff's attempt to take advantage of the innocent party exception, which allows a "truly innocent" landowner to "pursue a cost recovery action despite its status as a PRP." *Sherwin–Williams,* 125 F.Supp.2d at 745. The court in *Sherwin–* *Williams* noted that "it can hardly be said on this record that [plaintiff] is innocent of any pollution.... Therefore, [plaintiff] may not bring an action for cost recovery under § 107, and must instead rely on its claim for contribution under CERCLA to recover costs from [defendant]." *Id.*

cepts that Plaintiff could be entitled to an innocent party exception. Because the case will proceed in any event on Counts II and III, the court will accept, for now, that an innocent party exception exists and that Plaintiff may bring this action, despite its status as a PRP. The legal question can be revisited at a later stage, as appropriate. Accordingly, Defendant's motion to dismiss Count I of the complaint will be denied.

## B. Count II—Contribution Under CERCLA § 113

Plaintiff seeks contribution from Defendant under CERCLA § 113 for an equitable share of all costs of response incurred, including interest. Defendant asserts in its motion to dismiss that Plaintiff has not satisfied the statutory prerequisites for bringing a claim under § 113. CERCLA § 113(f)(1) provides that

> [a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. 9613(f)(1); CERCLA § 113(f)(1). The dispute between Plaintiff and Defendant over this claim involves the statutory construction of the first and last sentences of this section. Specifically, the disagreement involves whether a PRP can initiate a suit under CERCLA § 113(f)(1) for contribution from another PRP when no civil action has been brought under § 106 (federal administrative abatement action) or § 107 (cost recovery action by the government or a private party) against the PRP seeking to sue. Defendant argues, citing *Aviall Services, Inc. v. Cooper Industries Inc.*, 263 F.3d 134, 136 (5th Cir.2001), *reh'g en banc granted,* 278 F.3d 416 (5th Cir. 2001), that the express language of the first sentence of § 113(f)(1) limits the ability to sue under that provision to parties who have themselves been sued under § 106 or § 107. Plaintiff, on the other hand, argues that the express language of the provision in its entirety confirms a federal right of contribution. In its opposition, Plaintiff states that while "not perhaps the finest example of legislative drafting, § 113(f)(1) both (i) confirms a *pre-existing* right of contribution by responsible parties and (ii) explains the timing of such actions—that is, 'during or following' certain civil actions, or in the absence of such a civil action, at other times." Paper no. 7 at 21.

As both parties have noted in notices of supplemental authority, the Fifth Circuit recently issued its *en banc* decision in the *Aviall* case, concluding that a PRP is allowed to seek contribution from another PRP under § 113(f)(1) *even when no suit has been brought against the former under § 106 or § 107. See Aviall Services, Inc. v. Cooper Industries, Inc.,* 312 F.3d 677, 679, 2002 U.S.App. LEXIS 23574, at * 1 (5th Cir.2002). The *en banc* court took into consideration the plain language of the statutory provision, the structure of CERCLA, legislative history and policy concerns in its extensive analysis, concluding that "the most reasonable interpretation of the provision" is the one argued by Plaintiff in the instant case. *Id.,* at 680, 2002 U.S.App.Lexis 23574 at *7. The court noted that in order to adopt the construction advocated by Defendant here, the term "may" in the first sentence of § 113(f)(1) has to be interpreted as mean-

ing "must" or "shall," or the term "only" must be added. *See id.* at 680, 686, 2002 U.S. App. LEXIS 23574, at *4, 24. In addition, the *en banc* court criticized the dissent for arbitrarily narrowing the final sentence of § 113(f)(1) to refer to a PRP's ability to bring state law contribution claims. *See id.* at 681, 2002 U.S. App. LEXIS 23574, at *8. § 113(f)(1).

The Fourth Circuit has not yet explicitly ruled on whether a § 106 or § 107 claim against a party is a statutory prerequisite for that party to initiate a contribution action under § 113. In a recent case, *Crofton Ventures, LP v. G & H Partnership,* 258 F.3d 292 (4th Cir.2001), the court allowed a § 113 suit by a PRP where neither a § 106 action nor a § 107 action had been brought against the plaintiff in the case. The court in that case, however, did not consider or specifically rule on the issue of the necessity of a prior or pending § 106 or § 107 action.[4] There are numerous cases in which the Fourth Circuit, as well as other circuit courts, have implicitly affirmed the availability of relief under § 113 in contribution cases brought without a prior or pending administrative order or civil action under § 106 or § 107. *See, e.g., Minyard Enterprises, Inc. v. Southeastern Chemical & Solvent Co.,* 184 F.3d 373, 385 (4th Cir.1999); *Bedford Affiliates v. Sills,* 156 F.3d 416, 424 (2d Cir. 1998); *PMC, Inc. v. Sherwin–Williams Co.,* 151 F.3d 610, 615–16, 618 (7th Cir. 1998); *Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, 1301 (9th Cir.1997). At least two other circuits have explicitly stated that a PRP may bring an action under § 113, whether or not an action has been commenced against it under § 106 or § 107. *See Sun Company, Inc. v. Browning–Ferris, Inc.,* 124 F.3d 1187, 1191–93 (10th Cir.1997); *In the Matter of Reading Company,* 115 F.3d 1111, 1120, 1124 (3d Cir.1997).

■ The court agrees that the statutory construction adopted by the *en banc* panel in *Aviall* is the more reasonable one. The language of § 113(f)(1) allows a PRP to seek contribution during or following a § 106 or § 107 action brought against it, *or* in the absence of such an action against it. As previously noted, precedents from the Fourth Circuit, as well as numerous other circuits, also either implicitly or explicitly support this construction. Accordingly, the court holds that Plaintiff may bring an action for contribution under § 113 against Defendant, even though Plaintiff has not been the subject of an action under § 106 or § 107. Therefore, Defendant's motion to dismiss Plaintiff's claim for contribution under § 113 will be denied.

## C. Count III—Declaratory Judgment

Plaintiff requests a declaratory judgment finding that Defendant is liable for all future cleanup costs under CERCLA. Defendant argues that Plaintiff has failed to articulate any basis for such a declaratory judgment because, Defendant alleges, Plaintiff has failed to state a claim under either § 107 (Count I) or § 113 (Count II). Because the court will deny Defendant's motion to dismiss for failure to state a claim with respect to Counts I and II, Defendant's motion to dismiss Count III will also be denied.

## IV. Conclusion

For the foregoing reasons, the court will deny Defendant's motion to dismiss the

---

4. The *en banc* court in *Aviall* specifically noted that its decision is consistent with the Fourth Circuit's decision in *Crofton Ventures*.

*See Aviall Services, Inc.,* 312 F.3d 677, 689 n.21, 2002 U.S.App. Lexis at *29 n. 21.

complaint under FED.R.CIV.P. 12(b)(6). A separate Order will be entered.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ____ day of December, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion to dismiss the complaint under FED.R.CIV.P. 12(b)(6) BE, and the same hereby IS, DENIED; and

2. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.