**MERCURY MALL ASSOCIATES, INC., a Virginia Corporation, Plaintiff,**

v.

**NICK'S MARKET, INC., a Virginia Corporation,**

and

**Fashion Care Cleaners, Inc., a Tennessee Corporation,**

and

**Stephen Gibson, trustee in dissolution of Fashion Care Cleaners, Inc.,**

and

**Frank Gibson, trustee in dissolution of Fashion Care Cleaners, Inc. Defendant.**

No. CIV.A. 4:04CV80.

United States District Court, E.D. Virginia, Newport News Division.

Nov. 3, 2004.

Alan Dale Albert, LeClair Ryan PC, Norfolk, VA, for defendant.

Frank D. Gibson, Kingsport, TN, pro se.

Stephen W. Gibson, Knoxville, TN, pro se.

Douglas Edwin Miller, Patten Wornom Hatten & Diamonstein LC, Newport News, VA, for plaintiff

James Harrell Shoemaker, Jr., Patten Wornom Hatten & Diamonstein LC, Newport News, VA, for plaintiff.

John Carl Valdivielso, Kaufman & Canoles, Williamsburg, VA, for defendant.

John Carl Valdivielso, Kaufman & Canoles, Williamsburg, VA, pro se.

## MEMORANDUM OPINION AND ORDER

DOUMAR, District Judge.

Presently before the Court are two separate Motions to Dismiss. The Court has reviewed briefing from the affected parties and heard oral arguments on both Motions on Tuesday, October 12, 2004. The issues involved are ripe for decision.

The first Motion to Dismiss, by Defendants Stephen Gibson and Frank Gibson, involves the question whether a lawsuit for damages allegedly sustained as a result of a dissolved corporation's conduct can be maintained against former officers of that corporation, or their representatives, as trustees in dissolution-the holders of a dissolved corporation's liquidated assets before they are distributed to bona fide creditors and/or shareholders-under Tennessee law. While the Tennessee Code only provides that shareholders of a dissolved corporation can be sued upon liquidation of its assets, Tennessee's court-made "trust fund doctrine" allows suits against trustees in dissolution. Thus, a suit against the former officers of a dissolved corporation, or their representatives, if they are properly alleged to be trustees in dissolution, is permitted. However, it is insufficiently pleaded in the Complaint.

The second Motion to Dismiss, by Defendant Nick's Markets, raises several issues. First, it presents the question whether a responsible party under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, can maintain a cost recovery action pursuant to § 107(a) of that Act, 42 U.S.C. § 9607(a), against another potentially responsible party. CERCLA affords a responsible party no such lawsuit. Instead, a responsible party seeking relief from other potentially responsible parties must pursue it under CERCLA's contribution provision. This fact raises the core question presented by the second Motion: whether a CERCLA cost recovery action is a condition precedent to a contribution suit pursuant to § 113(f)(1) of that Act, 42 U.S.C. § 9613(f)(1). The Court holds that CERCLA imposes no such condition on contribution suits.

In addition, Nick's Markets' Motion raises issues concerning the availability of declaratory relief and attorney's fees. Declaratory relief remains available so long as the substantive claims underlying the lawsuit remain viable, which upon this Court's resolution of the instant Motion, they do. Attorney's fees, on the other hand, are not available under CERCLA. However, under limited circumstances, payments made to attorneys can comprise a portion of the necessary response costs apportioned among the responsible parties, but not the fees of this litigation.

We turn now to the particularities of the several, and at times involved, issues presented by the two Motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND [1]

### A. The Parties

**Plaintiff Mercury Mall Associates** ("MMA") is a Virginia general partnership and is the current fee simple owner of real property in Hampton, Virginia, commonly referred to as the Mercury Mall Parcel ("the Parcel"), which is the subject of the instant lawsuit. From December 28, 1983, until the time it assumed the Parcel in fee simple on December 14, 1988, MMA possessed a leasehold interest pursuant to a Lease Agreement ("the Lease") with Defendant Nick's Markets.

**Defendant Nick's Markets, Inc.** ("Nick's") is a Virginia corporation. Nick's was the fee simple owner of the Parcel from January 3, 1961 to December 14, 1988.[2] From December 28, 1983 until the time it sold the Parcel to MMA, Nick's operated a shopping center there in conjunction with MMA pursuant to the terms of the Lease. Nick's is believed by MMA

1. For obvious reasons, understanding who the parties to the present litigation are and the background facts leading to the lawsuit is necessary to comprehend the nature of the claims leveled by the Plaintiff and the legal issues presented by the instant Motions to Dismiss. The portrayal of the parties and other background facts in this Opinion is based on the various submissions by the parties to the Court: Plaintiff's Complaint, Defendant Fashion Care's Answer, and the briefing supplied by the affected Defendants in the Motions to Dismiss presently before the Court. However, the descriptions, dates, and other factual allegations contained in this Opinion remain that: allegations. As the factual allegations herein have not been put before the Court for determination, and since they may be essential to the ultimate outcome of the litigation, they are not intended as conclusive findings by the Court. In fact, none of the factual allegations contained in this Opinion are necessary to resolve the instant Motions to Dismiss.

2. During the period of the Lease and up until the time the parcel was transferred in fee simple to MMA, Nick's was known as Mi-Queen Corporation ("Mi–Queen"). Mi-Queen's stock was acquired by Nick's at some point in time after the fee simple transfer of the parcel to MMA.

to be a responsible party under CERCLA and hence liable for a proportionate share of response costs incurred to remedy environmental contamination on the Parcel.

**Defendant Fashion Care Cleaners ("Fashion Care")** is a Tennessee corporation that was dissolved in December 2001. Fashion Care operated a dry cleaning store under various trade names located in the shopping center on the Parcel from 1967 to December 2000. Fashion Care is believed by MMA to have contributed to environmental contamination on the Parcel and is thought to possess insurance coverage related to the claims that are the subject of the present litigation.

Finally, **Defendant Stephen Gibson** is co-executor of the estate of Mack B. Gibson, former President of Fashion Care. **Defendant Frank Gibson** is the former Vice President and Secretary of Fashion Care. The Estate and/or Trustees in Dissolution are believed to have information concerning Fashion Care's assets or applicable insurance coverage that might be available to satisfy the Plaintiff's claims.

### B. Plaintiff MMA's Complaint

Plaintiff MMA initiated the present suit in a Complaint dated June 22, 2004. A First Amended Complaint ("the Complaint") was subsequently filed on August 6, 2004. The Complaint alleges that throughout Fashion Care's operation of its store, from 1967 until it vacated the Parcel in December of 2000, it caused or contributed to the spilling, leaking, disposal and release of Tetrachloroethene, napthas, Stodard solvents, and other hazardous substances. MMA further claims that the spilling, leaking, disposal and release of hazardous chemicals contaminated the Parcel prior to the time that it entered into its partnership with Nick's on December 28, 1983. This, contends MMA, dramatically reduced the value of the Parcel prior to the time that it assumed a fee simple interest, for which there should have been a price adjustment in the Lease and/or a reduction in the eventual sale price it negotiated with Nick's. More significantly, and the grievance central to the present lawsuit, MMA claims that since purchasing the Parcel it has incurred environmental contamination response costs in an attempt to remedy the contamination and identify other responsible parties in accordance with the National Contingency Plan and the Virginia Department of Environmental Quality Voluntary Remediation Program.

MMA's Complaint seeks relief from Nick's, Fashion Care, and the Gibsons for costs related to the environmental contamination response effort it claims to have launched pursuant to CERCLA. Specifically, the Complaint levels three counts against all Defendants. Count One pleads a cost recovery action pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a). Count Two initiates a suit for contribution to environmental contamination response costs pursuant to CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1). Finally, Count Three prays for a declaration that the Defendants are liable for their proportionate share of all past, present, and future response and related costs that may be incurred due to the Parcel's environmental contamination, pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201. MMA indicates that it expects to proffer evidence that the total amount of its response and related costs exceeds $1.5 million, including attorney and other expert fees.

### C. Procedural Posture

On August 23, 2004, Fashion Care filed an Answer to the Complaint. That same day, the Gibsons filed their Motion to Dismiss. Two days later, on August 25, 2004, Nick's filed its separate Motion to Dismiss.

Both Motions, which seek dismissal of all Counts for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), are ripe for decision.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal is only appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) (citation omitted) (reciting the standard for dismissal as a plaintiff's failure to proffer grounds for relief supported by "any legal theory which might plausibly be suggested by the facts alleged").

The court's consideration of a motion to dismiss is constrained by a presumption that the facts averred in the plaintiff's complaint are true and is further limited by a narrow scope of review, which can extend no further than the information contained in the parties' pleadings. *Neitzke*, 490 U.S. at 326–27, 109 S.Ct. 1827. Consequently, dismissal should only be ordered under "very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989).

## III. GIBSONS' MOTION TO DISMISS

### A. Summary of the Motion

MMA's Complaint names Frank Gibson and Stephen Gibson as defendants in their alleged capacities as trustees in dissolution of Fashion Care. Specifically, MMA avers that Frank Gibson, former Vice President and Secretary (an officer) of Fashion Care, and Stephen Gibson, co-executor of the estate of Mack B. Gibson, Fashion Care's former President (an officer), both "have information related to assets of Fashion Care, or applicable insurance coverage of Fashion Care which may be available to satisfy the Plaintiff's claims." Pl.'s First Am. Compl. ¶ 4.

In their Motion to Dismiss, the Gibsons contend that they are not proper defendants because Tennessee law does not recognize the concept of a trustee in dissolution. Instead, they maintain that a suit seeking recovery from the liquidated assets of a dissolved corporation can only be maintained against the corporate entity or its shareholders. Thus, while it may have been proper to serve the Complaint on the Gibsons in their capacities as a former officer and representative of a former officer of Fashion Care in order to initiate the CERCLA claim against Fashion Care, there is no legal justification for joining them as defendants.

MMA rejoins that non-shareholders who are trustees in dissolution of a dissolved corporation can be held jointly and severally liable for the corporation's debts under Tennessee's court-made "trust fund doctrine," a doctrine sounding in equity which MMA contends provides a means for creditors to reach the liquidated assets of a corporation not dispersed to either bona fide creditors or shareholders.

### B. Analysis

#### 1. Choice of Law

The parties do not dispute that resolution of this Motion is guided by Tennessee law. It is accepted that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed.R.Civ.P. 17(b); *see also*

*United States v. Moore*, 698 F.Supp. 622, 624 (E.D.Va.1988) ("The capacity of a corporation to sue or be sued is determined by its law of incorporation."). We therefore turn to a review of the relevant Tennessee statutory and case law and its application to the present case.

### 2. The Tennessee Code

In Tennessee, when a corporation is dissolved, a plaintiff may initiate "a proceeding by or against the corporation in its corporate name." Tenn.Code. Ann. § 48–24–105(b)(5); *see also id.* § 48–24–105(b)(7) (preserving the authority of the corporation's registered agent upon dissolution). In instances where a dissolved corporation's assets have been liquidated and dispersed to its shareholders, Tennessee law supplies an explicit cause of action against the shareholders:

> If the assets have been distributed in liquidation, [a claim may be enforced under this section] against a shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less, but a shareholders' total liability for all claims under this section may not exceed the total amount of assets distributed to the shareholder.

Tenn.Code Ann. § 48–24–107(d)(2).

 In effect, this arrangement prescribes a blueprint for lawsuits against dissolved corporations. In spite of dissolution, a plaintiff should bring its claim against the corporation itself. In the event that the corporate assets have been distributed to its shareholders in liquidation, a plaintiff may additionally or alternatively plead a claim against the shareholders. Indeed, "[u]pon dissolution of a corporation, the stockholders succeed to the equitable ownership of its assets subject to the claims of the creditors of the corporation." *Schlater v. Haynie*, 833 S.W.2d 919, 926 (Tenn.Ct.App.1991) (citing *Conn. Mut. Life. Ins. Co. v. Dunscomb*, 108 Tenn. 724, 69 S.W. 345 (1902)); *see also Unifirst Corp. v. Harry Lane*, 2001 WL 8791, *2 (Tenn.Ct.App. Jan.4, 2001) ("The creditors of a dissolved corporation may enforce a claim against the corporate assets in the hands of the shareholders."). The Tennessee Code is silent on the issue whether a creditor may pursue some persons other than shareholders in the event of liquidation, which begs the fighting question presented by the instant Motion.

### 3. Tennessee's "Trust Fund Doctrine"

 In its Complaint, MMA does not allege that the Gibsons are shareholders. Instead, the Complaint suggests, but does not specifically allege, that as a former officer and co-executor of the estate of a former officer, the Gibsons are trustees in dissolution. No Tennessee case defines a trustee in dissolution. However, it is self-evident that a trustee in dissolution is a person in whom the assets of a dissolved corporation are vested in trust for the benefit of bona fide creditors. *See* Black's Law Dictionary 1519 (7th Ed.1999) (defining a *trustee* as "one who, having the legal title to property, holds it in trust for the benefit of another"). Since the Tennessee Code contains no explicit provision for a lawsuit against any person other than a shareholder or the dissolved corporation itself, it is the Gibsons' position that Tennessee does not recognize the concept of a trustee in dissolution and that the lawsuit must therefore be dismissed. However, under the Gibsons' reasoning, the creditors of a dissolved corporation whose assets have been liquidated and distributed to persons other than shareholders possess no means of recovery, even if the persons to which the assets were distributed are not bona fide creditors.

It is precisely this quandary that caused Tennessee courts to develop the "trust fund doctrine," a doctrine sounding in equity extending "creditors ... 'a right to follow [the corporation's] assets or property into the hands of [anyone] who is not a holder in good faith in the ordinary course of business.'" *Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 756 (Tenn.2001) (quoting *Jennings Neff & Co. v. Crystal Ice Co.*, 128 Tenn. 231, 159 S.W. 1088, 1089 (1913)); *see also Rogersville & Jefferson R.Co. v. Kyle*, 77 Tenn. 691, 697 (1882) ("[T]he acting managers of a corporation at the time of the dissolution, *and who thereby become trustees ... are* jointly and severally responsible to its creditors *to the extent of the property which may come into their hands.*") (emphasis added). This court-made doctrine "was developed ... to alleviate the harsh effects of the common law principle that all suits by creditors against a corporation are extinguished upon the corporation's dissolution." *Kradel*, 60 S.W.3d at 756. In effect, much like the statutory scheme allowing creditors of a corporation to follow the assets of the corporation into the pockets of shareholders, the trust fund doctrine allows creditors to follow corporate assets into the pockets of persons who are not bona fide creditors. As the Supreme Court of Tennessee explained, "if [a corporation's assets] have been distributed among stockholders, *or gone into the hands of others than bona fide creditors or purchasers,* leaving debts of the corporation unpaid, such holders take the property charged with the trust, in favor of the corporation creditors." *Id.* at 756–57 (quoting *Marr v. Bank of W. Tenn.*, 44 Tenn. 471, 477 (1867)) (emphasis added). Thus, contrary to the Gibsons' contention, Tennessee does recognize the concept of trustees in dissolution and affords a theory of recovery against them under the trust fund doctrine.

### 4. Conclusion

Nonetheless, merely including the phrase "trustee in dissolution" in a complaint is insufficient to state a claim upon which relief can be granted. All MMA has alleged is that the Gibsons "have information related to assets of Fashion Care, or applicable insurance coverage of Fashion Care which may be available to satisfy the Plaintiff's claims." Pl.'s First Am. Compl. ¶ 4. Even if true, merely possessing information does not render the Gibsons responsible as trustees in dissolution for the liabilities of now dissolved Fashion Care. In fact, the Gibsons may not even possess any of Fashion Care's liquidated assets, presuming that there were any assets to liquidate in the first place. Put another way, MMA's Complaint does not allege that the harsh effects of the common law, as required by Tennessee's trust fund doctrine, prevail here.

The fashioning of an equitable remedy is only appropriate "if the prescribed legal remedies are inadequate." *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir.2004). MMA has not alleged that the manner in which Fashion Care's assets were liquidated makes legal relief pursuant to Tennessee's statutory scheme inadequate. As a consequence, MMA's claims against the Gibsons, as presently stated in the Complaint, lack legal sufficiency. However, it is well-accepted in Federal courts that pleading is not "a game of skill in which one misstep by counsel may be decisive to the outcome." *Conley*, 355 U.S. at 48, 78 S.Ct. 99. Thus, though MMA has not alleged facts warranting continuation of this lawsuit under the Tennessee Code or its trust fund doctrine, it should be given an opportunity to do so.

To bring a cognizable claim, MMA must amend its Complaint to allege facts triggering application of the trust fund doctrine. This requires MMA to allege that Fashion Care's assets have been liquidated

and dispersed to the Gibsons as trustees for the now dissolved corporation's bona fide creditors. Alternatively, MMA can amend its Complaint to pursue a claim against the Gibsons in their individual capacity as shareholders pursuant to § 48–24–107(d)(2) of the Tennessee Code. In either case, under both § 48–24–107(d)(2) and the trust fund doctrine, as explicated by the Tennessee courts, the amount of recoverable damages can extend only so far as the value of the assets liquidated by Fashion Care and dispersed to the Gibsons. Absent other facts not alleged, or some other legal theory not presented, MMA cannot obtain any recovery from the Gibsons' personal assets beyond the amount received in trust or otherwise.

In sum, to maintain its suit against the Gibsons, MMA must specify the capacity in which they are suing the Gibsons and clarify the legal theory under which they intend to proceed. Accordingly, the Court holds Nick's Motion to Dismiss in **ABEYANCE** and **ORDERS** MMA to amend its Complaint to state a cause of action consistent with the requirements of Tennessee law within 14 days of the date of this Order. In the event that MMA does not amend its Complaint, upon motion by the Gibsons, the claims will be dismissed with prejudice.

## IV. NICK'S MOTION TO DISMISS

### A. Summary of the Motion

Nick's levels four attacks to MMA's Complaint: 1) that Count One, which seeks to impose joint and several liability on Nick's for environmental contamination response costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a) ("§ 9607(a)"), must be dismissed because MMA itself is a potentially liable party under CERCLA; 2) that, in the event that Count One is dismissed, Count Two, which seeks contribution towards environmental contamination response costs pursuant to CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1), must be dismissed because MMA has not been subjected to a separate CERCLA cost recovery action; 3) that, in the event that both Counts One and Two are dismissed, Count Three, which seeks declaratory relief, must be dismissed because a request for declaratory judgment fails without liability; and 4) that MMA's claim for attorney's fees must be dismissed because attorney's fees cannot be awarded in CERCLA litigation.

### B. Count One: CERCLA § 9607(a)

### 1. Summary of Arguments

Section 9607(a) subjects certain persons to liability for costs necessary to remedy environmental contamination for which they are responsible.[3] Count One of

**3.** In its entirety, § 9607(a) reads as follows:

(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date

1. Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treat-

ment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not

MMA's Complaint alleges that Nick's is "jointly and severally liable for response costs" pursuant to that provision. Pl's. First Am. Compl. ¶ 26. Nick's contends that MMA's claims for joint and several liability for response costs under § 9607(a) on the one hand, and for contribution towards response costs under § 9613(f)(1) on the other hand, are contradictory because MMA is itself a potentially liable party under CERCLA. In other words, Nick's argues that a potentially responsible party ("PRP") cannot bring a cost recovery action pursuant to § 9607(a) against another PRP. MMA maintains that § 9607 contains an implied cause of action for contribution that works in conjunction with the express contribution action afforded to responsible parties by § 9613(f)(1).

## 2. Analysis

■ When CERCLA was first passed in 1980, it did not contain a right of action for contribution among jointly liable parties. As a consequence, "[f]ederal courts soon began articulating a federal common law right of contribution to resolve claims among PRPs." *Aviall Servs. Inc. v. Cooper Indus.*, 312 F.3d 677, 682 (5th Cir.2002) (en banc), *cert. granted,* —— U.S. ——, 124 S.Ct. 981, 157 L.Ed.2d 811 (2004). However, § 9613 was added to CERCLA in 1986 and erased the void previously filled by the

federal common law. Indeed, the purpose of § 9613 was to "clarif[y] and confirm [ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." H.R.Rep. No. 99–253(I), at 79 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2861.

■ Now that CERCLA contains an explicit provision for contribution suits, a potentially liable party under CERCLA seeking recovery from another PRP must utilize the means Congress established in § 9613. The Fourth Circuit held exactly that in *Pneumo Abex Corporation v. High Point, Thomasville & Denton Railroad,* 142 F.3d 769, 776 (4th Cir.1998), where it dismissed non-covered persons from a CERCLA lawsuit and, on remand, directed the district court to apportion liability among the remaining PRPs under § 9613. The Fourth Circuit determined "that § 9613 must be used by parties who are themselves potentially responsible parties." *Id.* (citations omitted). Federal appellate courts that have addressed the matter follow suit with the Fourth Circuit. *See Bedford Affiliates v. Sills,* 156 F.3d 416, 424 (2d Cir.1998) (collecting cases).

---

inconsistent with the national contingency plan;

**(B)** any other necessary costs of response incurred by any other person consistent with the national contingency plan;

**(C)** damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

**(D)** the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue

from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

42 U.S.C. § 9607(a).

As a consequence, Nick's Motion to Dismiss Count One of the Complaint is **GRANTED**. Accordingly, as to Defendant Nick's, Count One of the Complaint is **DISMISSED WITH PREJUDICE.**

### C. Count Two: CERCLA § 9613(f)(1)

#### 1. Legal Issue

■ We turn now to the core issue presented by Nick's Motion to Dismiss: the relationship, if any, between a CERCLA cost recovery action and a suit for contribution under § 9613(f)(1). Count Two of MMA's Complaint pleads a suit for contribution towards environmental contamination response costs pursuant to § 9613(f)(1) of CERCLA, which states:

> *Any person may seek contribution from any other person who is liable or potentially liable under § 9607(a) of this title, during or following any civil action under § 9606 of this title or under § 9607(a) of this title.* Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. *Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under § 9606 of this title or § 9607 of this title.*

(emphasis added). The question in dispute is whether a responsible party seeking contribution for environmental contamination response costs pursuant to this section must first be the subject of a cost recovery action brought under § 9606 or § 9607(a). Nick's contends it must. If that is the case, MMA's contribution suit must be dismissed because MMA, nor any prior owner, has been subjected to CERCLA litigation due to environmental contamination

sustained on the Parcel. Moreover, MMA's own § 9607(a) cost recovery action against the Defendants in this case, which would satisfy the condition allegedly contained in § 9613(f)(1), has now been dismissed by this Court. Thus, the continuation of this litigation hinges on resolving this issue.

■ Whether a CERCLA cost recovery action is a condition precedent to a § 9613(f)(1) contribution suit boils down to a matter of statutory interpretation. For the reasons explained, it is evident that a § 9613(f)(1) contribution suit stands on its own feet and need not be preceded or accompanied by a separate CERCLA cost recovery action.

#### 2. Legal Standard for Statutory Interpretation

■ "The 'first step' of statutory interpretation 'is to determine whether the language at issue has a plain and unambiguous meaning' by looking to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Orquera v. Ashcroft,* 357 F.3d 413, 418 (4th Cir.2003) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340–41, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). When the language of a statute is plain, courts must apply it "except in the rare circumstance when there is a clearly expressed legislative intent to the contrary or when a literal application would frustrate the statute's purpose or lead to an absurd result." *Nat'l Coalition for Students With Disabilities v. Allen,* 152 F.3d 283, 288 (4th Cir. 1998).

■ A clear understanding of a statute's plain meaning can only be achieved by determining a statute's purpose, which requires that courts "look not only to the particular statutory language, but to the design of the statute as a whole

and to its object and policy." *Crandon v. U.S.*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). This affords courts the perspective necessary to avoid violating a foremost "principle of statutory construction[,] that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (internal quotations omitted) In sum, courts must "follow the cardinal rule that a statute is to be read as a whole ... since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991).

### 3. Plain Language

The plain language dispute centers around an apparent contradiction between the statute's first and last sentence. The first sentence provides that a PRP "may" bring a contribution suit "during or following any civil action under [CERCLA]." The last sentence states that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under CERCLA." On the one hand, the first sentence arguably conditions a contribution suit on the existence of separate CERCLA litigation against a PRP. But then on the other hand, the last sentence appears to make clear that the viability of a contribution suit is not at all dependent on the instigation of separate CERCLA litigation against a PRP.

Nick's contends that the first sentence of the provision should control because it supplies § 9613(f)(1)'s enabling language, while the last sentence constitutes a savings provision and merely preserves remedies alternative to those provided within CERCLA. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (explaining

that enabling language ordinarily should not be overridden by a general savings clause because "the specific governs the general"). This contention is problematic, however, because unlike the enabling provision examined in *Morales*, § 9613(f)(1)'s alleged enabling language lacks specificity. The first sentence states that a contribution suit "may" be brought "during or following" a cost recovery action—it does not say "only" or "shall." On its face, this is "a statement of non-exclusive circumstances in which actions for contribution may be brought," *Aviall*, 312 F.3d at 686, and hardly conveys the transparent rigidity that Nick's urges.

Furthermore, it is not altogether clear that Nick's assertion that the enabling/savings relationship between the first and last sentences is correct. CERCLA already contains separate savings provisions that preserve a party's right to pursue alternative remedies and a state's right to impose them. *See* 42 U.S.C. §§ 9614(a) ("Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.") and 9652(d) ("Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants."). An examination of CERCLA as a whole reveals that reading the last sentence of § 9613(f)(1) as a savings clause renders CERCLA's all-encompassing savings clauses superfluous, a result which this Court is required to avoid.

Nick's in turn contends that reading the last sentence of § 9613(f)(1) to preserve a right to contribution "in the absence of a civil action" under CERCLA flatly contra-

dicts the *first sentence* and renders *it* superfluous. While it is indisputable that the relationship between the two sentences is awkward, reading the last sentence broadly does not necessarily render the first sentence null. Considered in light of § 9613(f)(1)'s purpose, which was to codify (and hence supplant) the federal common law contribution suit implied from § 9607(a), *see supra,* the last sentence can logically be understood as a clarification of how the new statutory contribution suits fit into the court-interpreted CERCLA scheme. *See Aviall,* 312 F.3d at 685, 687 (noting that the final sentence was necessary "to eliminate the uncertainty in case law prior to [§ 9613(f)(1)'s] enactment as to whether contribution was available under CERCLA at all"); *see also Pneumo Abex Corp.,* 142 F.3d at 776 (holding that § 9613(f)(1) is the exclusive vehicle for responsible parties to obtain contribution from other responsible parties).

Finally, Nick's argues that the term "contribution" itself, as utilized in § 9613(f)(1), presumes that a separate lawsuit must have already been initiated before a contribution suit can be brought against joint tortfeasors. *See United Tech. v. Browning–Ferris,* 33 F.3d 96, 99 (1st Cir.1994) ("Contribution is a standard legal term that enjoys a stable, well-known denotation. It refers to a claim by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make.") (internal quotations omitted). This argument falls out from underneath itself on two accounts. First, as explained directly above, the last sentence of the provision appears to make clear that the existence of a pending or prior lawsuit is not a prerequisite for contribution as contemplated by § 9613(f)(1). Second, as will be discussed more below, CERCLA aims to encourage responsible parties to take action short of being sued or subjected to adverse administrative action by the government. Thus, though not forced to pay by litigation, the CERCLA statutory scheme in effect compels private response to environmental contamination, which warrants contribution according to the term's own meaning.

This discussion in and of itself indicates that § 9613(f)(1) lacks the plainness that Nick's asserts. Indeed, even the Supreme Court has lamented that CERCLA, in general, "is not a model of legislative draftsmanship." *Exxon Corp. v. Hunt,* 475 U.S. 355, 363, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986); *see also Aviall,* 312 F.3d at 687 (highlighting § 9613(f)(1)'s "unusual syntax"). Thus, the mechanics of the statutory interpretation necessitate an examination of CERCLA's objectives, policies, and overall design.

### 4. Statutory Objectives and Policies

There is no need to engage in a lengthy resuscitation of the objectives and policies underlying CERCLA or to wade through mountains of its legislative history to deduce the intent of Congress with exactitude. The previous work of federal appellate courts and the United States Supreme Court spare us that arduous task and reveal, despite CERCLA's complexity, a straightforward statutory policy concerning environmental contamination.

■■■ CERCLA's dual purposes are "to promote prompt and effective cleanup of hazardous waste sites and the sharing of financial responsibility among the parties whose actions created the hazards." *Aviall,* 312 F.3d at 681; *see also* H.R.Rep. No. 99–253(III), at 15 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3038, 3038 (1986) ("CERCLA has two goals: 1) to provide for clean-up if a hazardous substance is released into the environment or if such release is threatened, and 2) to hold responsible parties liable for the costs of these clean-ups."). As an intuitive matter, the second goal is integral to attainment of

the first, which is precisely why CERCLA imposes the costs of environmental cleanup on parties responsible for the contamination. The Supreme Court has noted that "[t]he remedy that Congress felt is needed in CERCLA is sweeping: *everyone* who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup." *United States v. Bestfoods*, 524 U.S. 51, 56 n. 1, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (quoting *Penn v. Union Gas Co.*, 491 U.S. 1, 7, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989)). In particular, § 9613 was necessary to ensure that the costs of remediating environmental contamination were spread fairly among responsible parties and "that those responsible for environmental damage to sites, *not other parties*, properly bear the costs of their actions, and that the sites *are actually cleaned up.*" *Aviall*, 312 F.3d at 682 (emphasis added).

Imposing a separate CERCLA cost recovery action as a condition precedent to a contribution suit to recover costs incurred as a result of implementing a voluntarily remedial program undercuts the statute's twin purposes. The statutory construction urged by Nick's compels a responsible party engaged in voluntary remediation to foot the bill for other parties. This will have the effect of encouraging responsible parties to rest on their heels and wait for the instigation of adverse proceedings, rather than implement a cost-effective environmental contamination response strategy. *See id.* at 690 (imposing a condition on contribution suits would thwart "the reallocation of cleanup costs from less culpable PRPs to more culpable PRPs [,...] discourag[e] the voluntary expenditure of PRP funds on cleanup activities, [and ...] diminish[] the incentives for PRPs voluntarily to report contamination to state agencies").

### 5. Available Authority

Only one federal appellate court has specifically addressed this question. In *Aviall*, an en banc opinion by the United States Court of Appeals for the Fifth Circuit, for mainly the same reasons outlined above, determined that a CERCLA cost recovery action is not a condition precedent to a contribution suit under § 9613(f)(1). While the Fifth Circuit's en banc opinion is the only authority on point, nine circuits, including the Fourth Circuit, *see Crofton Ventures Ltd. P'ship v. G & H P'ship*, 258 F.3d 292, 294 (4th Cir.2001), have allowed contribution claims under § 9613(f)(1) to go forward without explanation when no prior cost recovery action had been initiated. *See Aviall*, 312 F.3d at 688 n. 21 (collecting cases). As the Fifth Circuit noted, "[t]he absence of direct precedent is like the dog that didn't bark." *Id.* at 689. The Supreme Court granted a petition for a writ of certiorari in *Aviall*, 124 S.Ct. 981 (2004), and held oral arguments in the case on October 6, 2004. Thus, the matter likely will be settled this term. Regardless, to the extent that it exists, the weight of available authority supports this Court's interpretation of the statute.

### 6. Conclusion

The position advanced by Nick's hinges on the plain language of § 9613(f)(i). However, an examination of the statutory language does not reveal the clarity Nick's contends. To the contrary, § 9613(f)(i) can only be understood in light of CERCLA's twin purposes of remedying environmental contamination and imposing the costs on responsible parties. Under Nick's interpretation, a responsible party seeking to stave off litigation and avail itself of CERCLA's incentives for voluntary reporting and response is in effect penalized for exercising better judgment.

Indeed, as responsible parties bide their time waiting to be sued, the adverse consequences of environmental contamination-to the public health and purse-will mount. Such a result is illogical according to § 9613(f)(1)'s plain terms and CERCLA's broader objectives and policies. When the law ceases to be logical, it ceases to be law.

This Court will not impose a condition that Congress, either within the plain language of the statute, or as a result of the policies that underlie it, has not clearly prescribed. The statutory text, its objectives and purposes, and the little authority that is available support the viability of MMA's § 9613(f)(1) suit for contribution. Accordingly, Nick's Motion to Dismiss Count Two of the Complaint is **DENIED**.

### D. Count Three: Declaratory Relief

■ In Count Three of its Complaint, MMA prays the Court issue a "declaration of rights and obligations of the parties pursuant to 42 U.S.C. § 9613(g)(2)" of CERCLA. Pl.'s First. Am. Compl. ¶ 37. Section 9613(g)(2) provides, in relevant part, that "[i]n any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." According to the United States Court of Appeals for the Fourth Circuit, "[t]he purpose of [§ 9613(g)(2) ] is, in fact, to require that the court's judgment in the first action have a preclusive effect as to the liability on all successive actions." *Dent v. Beazer Materials & Serv., Inc.*, 156 F.3d 523, 531 (4th Cir.1998). In other words, the purpose of the provision is to ensure that any judgment concerning a party's liability and/or its degree of responsibility is enforced in subsequent actions.

Nick's Motion to Dismiss Count Three relied on the dismissal of all of MMA's substantive claims. Since MMA's claim for contribution under § 9613(f)(1) remains intact, Nick's Motion with respect to Count Three is **DENIED**.

### E. Attorney's Fees

■ Finally, in the adamnum clause of its Complaint, MMA seeks "each Defendants' proportionate share of all response costs and other costs incurred by the Plaintiff in connection with delineating and remediating environmental contamination at the property including the recoverable portion of any attorney's fees." Pl.'s Compl., Ad Damnum Clause ¶ 1. Nick's moves to dismiss MMA's claim for attorney's fees, contending that they are unavailable in CERCLA litigation. As MMA's § 9607(a) claim has been dismissed, the narrow issue for decision is whether attorney's fees are available in contribution suits brought pursuant to § 9613(f)(1).

The United States Supreme Court addressed the issue whether attorney's fees are available in § 9607 CERCLA litigation in *Key Tronic Corp. v. United States*, 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). There, the Court held that CERCLA § 9607 "does not provide for the award of private litigants' attorney's fees associated with bringing a cost recovery action." *Id.* at 819, 114 S.Ct. 1960. However, the Supreme Court allowed for the possibility that some payments made to an attorney could be recovered as a necessary cost of response pursuant to § 9607(a)(4)(B), which outlines the scope of a responsible party's liability. The Supreme Court emphasized that "[t]he conclusion we reach with respect to litigation-related fees does not signify that all payments that happen to be made to a lawyer are unrecoverable expenses under CERCLA. On the contrary, some lawyers' work that is closely tied to the actual cleanup may constitute a

necessary cost of response in and of itself." *Id.* at 819–20, 114 S.Ct. 1960.

Section 9613(f)(1) directs courts "to allocate response costs among liable parties using such equitable factors as the court determines are appropriate." MMA's Complaint seeks "the recoverable portion of any attorney's fees." Since the Supreme Court in *Key Tronic* left open the possibility that some payments to an attorney could comprise a necessary cost of response, which this Court must allocate among the responsible parties pursuant to § 9613(f)(1), MMA's prayer for fees is not, on the face of the Complaint, legally insufficient because those fees comprising part of the necessary costs of response to environmental contamination technically constitute "the recoverable portion of any attorney's fees." Thus, in some (highly limited) instances delineated in *Key Tronic,* attorney's fees unrelated to the instigation of the present litigation could be included in the total cost of response.

 To be clear, however, this Court does not find that a party is *entitled* to attorney's fees in a § 9613(f)(1) contribution suit. To the contrary, a responsible party or any other CERCLA litigant is *not entitled* to any attorney's fees at all, and in particular cannot recover *any* fees related to pursuing the instant litigation. *Id.* at 819, 114 S.Ct. 1960; *see also Runyon v. McCrary,* 427 U.S. 160, 185, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (emphasizing that attorney's fees are ordinarily unavailable "absent explicit congressional authorization"). In fact, any fees ultimately included in any total sum apportioned among responsible parties are not attorney's fees at all, but rather are themselves necessary response costs. *Key Tronic,* 511 U.S. at 819–20, 114 S.Ct. 1960.

Nick's argument is well taken, but its legal gravamen is not the proper subject of a Motion to Dismiss. Accordingly, Nick's Motion to Dismiss MMA's claim for "the recoverable portion of any attorney's fees" is **DENIED.**

## V. CONCLUSION AND ORDER

### A. Motion to Dismiss by Defendants Frank Gibson and Stephen Gibson

For the foregoing reasons, Defendants Frank Gibson and Stephen Gibson's Motion to Dismiss is held in **ABEYANCE.** The Court **ORDERS** Plaintiff MMA to amend its Complaint to state a cognizable cause of action pursuant to the requirements of Tennessee law, as discussed above, within 14 days of the date of this Order. In the event that MMA does not so amend, upon motion by the Gibsons, the claims will be dismissed with prejudice.

### B. Motion to Dismiss by Defendant Nick's Markets

Finally, for the foregoing reasons, Defendant Nick's Markets' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** Specifically, Count One of the Complaint is **DISMISSED WITH PREJUDICE** as to Defendant Nick's Markets. The remaining counts and claims remain intact as to Defendant Nick's Markets.

The Clerk of the Court is **DIRECTED** to mail a copy of this Order to all counsel of record in the above-captioned matter.

**IT IS SO ORDERED.**